Approved, SCAO

Original - Court
1st copy - Defendant
2nd copy - Plaintiff
3rd copy - Return

**STATE OF MICHIGAN**
**9TH JUDICIAL DISTRICT**
**JUDICIAL CIRCUIT**
**COUNTY**

9TH
(handwritten)

**SUMMONS**
~~FILED~~
SEP 3 0 2024
9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN

**CASE NUMBER**
2024-0561-

CC Curtis J. Bell

Court address: 330 E 1S AVNor Street Kalamazoo MI 49001

Court telephone number: 269-383-8837

**Plaintiff's name, address, and telephone number**

Undra Brown 4329
Duke Street Kalamazoo MI
49008 A4 269-271-2612

v

**Defendant's name, address, and telephone number**

City of Kalamazoo
Public Safety
# 269-488-8911
150 E Crosstown PKWY
# A Kalamazoo MI 49001

**Plaintiff's attorney bar number, address, and telephone number**

Undra Brown 4329 Duke
Street Kalamazoo MI 49008
A4 269-271-2612

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

Issue date: 9.26.24

Expiration date*: 12.26.24

Court clerk

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the deal of the court.

MC 01  (3/23)  **SUMMONS**    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**Summons**  (3/23)

Case Number 2024-0561.
CC

## PROOF OF SERVICE

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

## CERTIFICATE OF SERVICE / NONSERVICE

☑ I served   ☑ personally   ☐ by registered or certified mail, return receipt requested, and delivery restricted to the addressee (copy of return receipt attached)   a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| City of Kalamazoo | |
| **Place or address of service** | Kalamazoo MI |
| Public Safety    150 E Crosstown PKWY #A | 49001 |
| **Attachments (if any)** | Hine 15462 |
| See H# for the Crimes by Officers | Grason 13868 |
| | Smith 14471 |
| | See H# |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☑ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
|---|---|---|---|---|
| $  0 | | $ | | Indra Brown |
| Incorrect address fee | Miles traveled | Fee | **TOTAL FEE** | **Name (type or print)** |
| $  0 | | $ | $ | |

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and com

_____ on ____
Attachments (if any)                                    Date

_____ on behalf of _____
Signature

_____
Name (type or print)

**RECEIVED**

SEP 30 2024

**PROFESSIONAL
STANDARDS**

MCL 600.1910, MCR 2.104, MCR 2.105

**FILED**

Approved, SCAO

Original - Court | 1st copy - Defendant
2nd copy - Plaintiff | 3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| **JUDICIAL DISTRICT** | Cumendee **COMPLAINT** | 2024: 05 |
| **JUDICIAL CIRCUIT** | Page of pages | |
| **COUNTY PROBATE** | | |

SEP 3 0 2024

9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN

Court address

330 Elecnor Street Kalamazoo MI 4900

Court telephone no.

Curtis J. Bell   269-383-8837

Plaintiff's name(s), address(es), and telephone no(s).

Undra Brown
4329 Duke Street Kalamazoo MI
49008 AY # 269-271-2612

v

Defendant's name(s), address(es), and telephone no(s).

City of Kalamazoo
Public Safety
# 269-488-8911
150 2 Crosstown PKWY
#A Kalamazoo MI 49001

Plaintiff's attorney, bar no., address, and telephone no.

Undra Brown
4329 Duke street Kalamazoo MI
49008 AY # 269-271-2612

all officers and others
shall be charged with conspiracy a kidnapping ... a depriving me life, liberty a kidnapping and property of my rights is a violation with which is state Amendment 4 and laws Amendment 5 section 1 Amendment 1 Amendment 14 section 1 Amendment 8 Amendment 6

9-30-24

Date

Signature

Undra Brown

MC 01a (6/19) **COMPLAINT**

Requesting 2.5 million see municipal trust and insurance bonds per defendant in regards of these violations and all participants to be incarcerated to the minimum and maximum time for violations and a lean to be placed on all financial assets houses etc consistent with the my God giving rights & United States Constitution a settlement can be reached with just compensation of 2.5 million dollars after all court fees and retraining all officers /public servants that are involved in these violations training must start with Police academy proper education on basic obligations as a public servant and most important education all man's God's giving rights and those rights are upheld through the United States Constitution

 Outlook

---

## Copied

---

**From** bishop brown <undrabrown74@gmail.com>
**Date** Thu 9/26/2024 10:33 AM
**To**  Law <Law@kpl.gov>

Some people who received this message don't often get email from undrabrown74@gmail.com. Learn why this is important

My name is undra Brown and I'm requesting _2.5 million USD for the  prior constitutional violations character defamation illegally incarceration illegally detained fraud using my persons and papers without my consent and or a police officer deleting videos out of my phone which is evidence tampering failure to investigate crimes that against me causing me to lose tens if not hundreds of thousands of dollars tampering with evidence conspiracy the cover of crimes which has caused me to have high blood pressure losing potential business losing clientele causing me to breach contracts with the better Business bureau Vistaprint websites etc I asked the court to please run these concurrent that I do not overload the courts with separate lawsuits and petitions causing more a strain on my physical person mind body and soul and financially I asked the court to please acknowledge that no bill of attainder should restrict my life liberty and limb by looking at all facts presented and it's applicable time in which I have video recordings case numbers screenshots of character deformation by clients I still have clients checks that I had to redeposit in which I was directed by the bank causing more character deformation on my business Fair Neighborhood Services LLC and my person's and witnesses I asked the courts to use police records and phone calls and video by the persons and and businesses of residence inn of Kalamazoo Kalamazoo Police department Kalamazoo sheriff Kalamazoo mayor deer run apartments consumers credit Union and or the case numbers that is attached to this letter

Officers

Hine
15467

Casea
13868

Smith
1441

Your case/report number is:

2024- 600 85 872

Date: 9-5-24

Officer's information:

*Ron DeRoiT*
Officer's Name

15761
Badge Number

To receive information regarding investigation of your case, contact the investigating division. To obtain a copy of the police report, call (269) 337-8106.

### *Online Accident Reports*

**Accident Reports** will be available for purchase by you or your insurance Company at
https://buycrash.lexisnexisrisk.com/

Your case/report number is:

24 - 11227

Date: 08-23-2024

Officer's information:

PSC STANLEY
Officer's Name

11067
Badge Number

To receive information regarding investigation of your case, contact the investigating division. To obtain a copy of the police report, call (269) 337-8106.

### *Online Accident Reports*

**Accident Reports** will be available for purchase by you or your insurance Company at
https://buycrash.lexisnexisrisk.com/

Your case / report number is:

22-019009

Date: 12-27-22

Officer's name & badge number:

Schmeltz
Name

1477
Badge Number

To receive information regarding investigation of your case, contact the investigating division. To obtain a copy of the police report, call 269-337-8106.

### *Online Accident Reports*

**Accident Reports** will be available for purchase by you or your insurance company at www.ecrash.lexisnexis.com

MICHIGAN LEGISLATURE

Michigan Compiled Laws Complete Through PA 122 of 2024

Senate adjourned until Tuesday, October 1, 2024 10:00 AM

House adjourned until Tuesday, October 15, 2024 1:30 PM

Home   Legislature   Laws   More                                                                    Sign Up   Log In

# MCL - Section 600.2911

Download Section

Chapter 600

Act 236 of 1961

236-1961-29

◀ Previous Section    Next Section ▶

## REVISED JUDICATURE ACT OF 1961 (EXCERPT)
## Act 236 of 1961

### 600.2911 Action for libel or slander.

Sec. 2911.

(1) Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense.

(2)(a) Except as provided in subdivision (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings.

(b) Exemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his or her action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so, and proof of the publication or correction shall be admissible in evidence under a denial on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages. For libel based on a radio or television broadcast, the retraction shall be made in the same manner and at the same time of the day as the original libel; for libel based on a publication, the retraction shall be published in the same size type, in the same editions and as far as practicable, in substantially the same position as the original libel; and for other libel, the retraction shall be published or communicated in substantially the same manner as the original libel.

LII > U.S. Code > Title 28 > PART VI > CHAPTER 181 **> §4101**

Quick search by citation:
**Title**

enter title

**Section**

section

Go!

# 28 U.S. Code § 4101 - Definitions

U.S. Code    Notes

In this chapter:

**(1) DEFAMATION.—**
The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.

**(2) DOMESTIC COURT.—**
The term "domestic court" means a Federal court or a court of any State.

**(3) FOREIGN COURT.—**

LII > Electronic Code of Federal Regulations (e-CFR) > Title 25—Indians
> CHAPTER I—BUREAU OF INDIAN AFFAIRS, DEPARTMENT OF THE INTERIOR
> SUBCHAPTER B—LAW AND ORDER
> PART 11—COURTS OF INDIAN OFFENSES AND LAW AND ORDER CODE
> Subpart D—Criminal Offenses
> **§ 11.440 Tampering with or fabricating physical evidence.**

# 25 CFR § 11.440 - Tampering with or fabricating physical evidence.

CFR

### § 11.440 Tampering with or fabricating physical evidence.

A person commits a misdemeanor if, believing that an official proceeding or investigation is pending or about to be instituted, he or she:

**(a)** Alters, destroys, conceals, or removes any record, document or thing with purpose to impair its verity or availability in such proceeding or investigation; or

**(b)** Makes, presents or uses any record, document or thing knowing it to be false and with the purpose to mislead a public servant who is or may be engaged in such proceeding or investigation.

### THE MICHIGAN PENAL CODE (EXCERPT)
### Act 328 of 1931

**750.483a Prohibited acts; penalties; "retaliate," "official proceeding," and "threaten or intimidate" defined.**

Sec. 483a. (1) A person shall not do any of the following:

(a) Withhold or refuse to produce any testimony, information, document, or thing after the court has ordered it to be produced following a hearing.

(b) Prevent or attempt to prevent through the unlawful use of physical force another person from reporting a crime committed or attempted by another person.

(c) Intentionally use the person's professional position of authority over another person to prevent or attempt to prevent the other person from reporting a crime listed in section 136b, 520b, 520c, 520d, 520e, or 520g, that is committed or attempted by another person.

(d) Retaliate or attempt to retaliate against another person for having reported or attempted to report a crime committed or attempted by another person. As used in this subdivision, "retaliate" means to do any of the following:

(*i*) Commit or attempt to commit a crime against any person.

(*ii*) Threaten to kill or injure any person or threaten to cause property damage.

(2) A person who violates subsection (1) is guilty of a crime as follows:

(a) Except as provided in subdivision (b), the person is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.

(b) If the violation involves committing or attempting to commit a crime or a threat to kill or injure any person or to cause property damage, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $20,000.00, or both.

(3) A person shall not do any of the following:

(a) Give, offer to give, or promise anything of value to any person to influence a person's statement to a police officer conducting a lawful investigation of a crime or the presentation of evidence to a police officer conducting a lawful investigation of a crime.

(b) Threaten or intimidate any person to influence a person's statement to a police officer conducting a lawful investigation of a crime or the presentation of evidence to a police officer conducting a lawful investigation of a crime.

(4) A person who violates subsection (3) is guilty of a crime as follows:

(a) Except as provided in subdivision (b), the person is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.

(b) If the violation involves committing or attempting to commit a crime or a threat to kill or injure any person or to cause property damage, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $20,000.00, or both.

(5) A person shall not do any of the following:

(a) Knowingly and intentionally remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceeding.

(b) Offer evidence at an official proceeding that the person recklessly disregards as false.

(6) A person who violates subsection (5) is guilty of a crime as follows:

(a) Except as provided in subdivision (b), the person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

(b) If the violation is committed in a criminal case for which the maximum term of imprisonment for the violation is more than 10 years, or the violation is punishable by imprisonment for life or any term of years, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $20,000.00, or both.

(7) It is an affirmative defense under subsection (3), for which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to provide a statement or evidence truthfully.

(8) Subsections (1)(a), (3)(b), and (5)(b) do not apply to any of the following:

(a) The lawful conduct of an attorney in the performance of the attorney's duties, such as advising a client.

(b) The lawful conduct or communications of a person as permitted by statute or other lawful privilege.

(9) This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same transaction as the violation of this section.

(10) The court may order a term of imprisonment imposed for a violation of this section to be served

©                                                                                        *Courtesy of www.legislature.mi.gov*

Article 1, Section 9, Clause 3

*No Bill of Attainder or ex post facto Law shall be passed.*

A bill of attainder is legislation that imposes punishment on a specific person or group of people without a judicial trial.[1] The term has its roots in English law before the Founding. As the Supreme Court has explained:

> The bill of attainder, a parliamentary act sentencing to death one or more specific persons, was a device often resorted to in sixteenth, seventeenth and eighteenth century England for dealing with persons who had attempted, or threatened to attempt, to overthrow the government.[2]

A related sanction, known as a "bill of pains and penalties," historically referred to legislation imposing extrajudicial punishments less severe than death, such as banishment or deprivation of political rights.[3] Bills of attainder and bills of pains and penalties were legal in England at the time of the Founding, and state legislatures in the United States also enacted bills of attainder and bills of pains and penalties during the Revolution.[4] However, two separate clauses of the Constitution, Article I, Sections 9 and 10, respectively banned enactment of bills of attainder by the Federal Government and the states.[5]

The Framers adopted the constitutional prohibitions on bills of attainder unanimously and without debate.[6] However, sources from around the time of the Founding outline key concerns underlying the Bill of Attainder Clauses. In the *Federalist No. 44*, James Madison noted that many states had enacted constitutional provisions banning bills of attainder.[7] Observing that bills of attainder "are contrary to the first principles of the social compact, and to every principle of sound legislation," he opined that it was appropriate for the Framers also to ban the practice in the federal constitution, "add[ing] this constitutional bulwark in favor of personal security and private rights."[8] Joseph Story's *Commentaries* explained that bills of attainder undermine both separation of powers and the individual right to a judicial trial.[9]

LII > Electronic Code of Federal Regulations (e-CFR)

> Title 5—Administrative Personnel

> CHAPTER XVI—OFFICE OF GOVERNMENT ETHICS

> SUBCHAPTER B—GOVERNMENT ETHICS

> PART 2635—STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE
EXECUTIVE BRANCH

> Subpart A—General Provisions  **> § 2635.101 Basic obligation of public service.**

# 5 CFR § 2635.101 - Basic obligation of public service.

CFR

## § 2635.101 Basic obligation of public service.

**(a)** *Public service is a public trust.* Each employee has a responsibility to the United States Government and its citizens to place loyalty to the Constitution, laws, and ethical principles above private gain. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each employee must respect and adhere to the principles of ethical conduct set forth in this section, as well as the implementing standards contained in this part and in supplemental agency regulations.

**(b)** *General principles.* The following general principles apply to every employee and may form the basis for the standards contained in this part. When a situation is not covered by the standards set forth in this part, employees must apply the principles set forth in this section in determining whether their conduct is proper.

**(1)** Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws, and ethical principles above private gain.

**(2)** Employees shall not hold financial interests that conflict with the conscientious performance of duty.

**(3)** Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest.

**(4)** An employee shall not, except as permitted by subpart B of this part, solicit or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the employee's agency, or whose interests may be substantially affected by the performance or nonperformance of the employee's duties.

**(5)** Employees shall put forth honest effort in the performance of their duties.

**(6)** Employees shall not knowingly make unauthorized commitments or promises of any kind purporting to bind the Government.

**(7)** Employees shall not use public office for private gain.

**(8)** Employees shall act impartially and not give preferential treatment to any private organization or individual.

**(9)** Employees shall protect and conserve Federal property and shall not use it for other than authorized activities.

**(10)** Employees shall not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities.

**(11)** Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.

**(12)** Employees shall satisfy in good faith their obligations as citizens, including all just financial obligations, especially those—such as Federal, State, or local taxes—that are imposed by law.

**(13)** Employees shall adhere to all laws and regulations that provide equal opportunity for all Americans regardless of, for example, race, color, religion, sex (including pregnancy, gender identity, and sexual orientation), national origin, age, genetic information, or disability.

**(14)** Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

**(c)** *Related statutes.* In addition to the standards of ethical conduct set forth in this part, there are conflict of interest statutes that prohibit certain conduct. Criminal conflict of interest statutes of general applicability to all employees, 18 U.S.C. 201, 203, 205, 208, and 209, are summarized in the appropriate subparts of this part and must be taken into consideration in determining whether conduct is proper. Citations to other generally applicable statutes relating to employee conduct are set forth in subpart I of this part, and employees are further cautioned that there may be additional statutory and regulatory restrictions applicable to them generally or as employees of their specific agencies. Because an employee is considered to be on notice of the requirements of any statute, an employee should not rely upon any description or synopsis of a statutory restriction, but should refer to the statute itself and obtain the advice of an agency ethics official as needed.

 CFR Toolbox

Law about... Articles from Wex
Table of Popular Names
Parallel Table of Authorities

KeyCite Yellow Flag - Negative Treatment
Abrogation Recognized by State v. Valentine, Wash., May 1, 1997

145 Me. 77

Supreme Judicial Court of Maine.

## STATE

v.

## ROBINSON.

March 8, 1950.

### Synopsis

Rodney L. Robinson was convicted in the Superior Court of Somerset County, of assault and battery, and he excepted. The Supreme Judicial Court, Merrill, J., held that evidence sustained defendant's conviction, and that denial of defendant's requested instruction, which ignored fact that defendant was not entitled to use any force whatsoever in resisting attempt by officer to make arrest, was proper.

Exceptions overruled, and judgment entered for State.

West Headnotes (7)

[1]    **Assault and Battery** ⬤ Weight and Sufficiency of Evidence

Evidence sustained conviction of assault and battery.

[2]    **Assault and Battery** ⬤ Questions of Law or Fact

In assault and battery prosecution, where testimony of state's witnesses, if believed, was sufficient to establish guilt of defendant beyond a reasonable doubt, refusal to direct a verdict of not guilty was proper.

3 Cases that cite this headnote

[3]    **Criminal Law** ⬤ Erroneous requests

**Trial** ⬤ Duty to give requested instruction; erroneous requests

A requested instruction which is not, in its totality, sound law, is properly withheld and court has no duty to eliminate errors in requested instruction.

3 Cases that cite this headnote

[4]    **Assault and Battery** ⬤ Searches, seizures, and arrests in general

An illegal arrest is an assault and battery.

1 Case that cites this headnote

[5]    **Criminal Law** ⬤ Resisting arrest

A person attempted to be restrained of his liberty has same right, and only same right, to use force in defending himself as he would have in repelling any other assault and battery.

4 Cases that cite this headnote

[6]    **Assault and Battery** ⬤ Provocation

Words alone do not justify an assault.

[7]    **Criminal Law** ⬤ Issues

In assault and battery prosecution, proffered instruction that defendant had a right to resist attempted arrest without a warrant, if at time of alleged assault defendant was not intoxicated to degree sufficient to authorize officer to arrest him without a warrant, and that unless defendant used more force to resist unlawful arrest than was reasonable, defendant was not guilty, ignored question of fact whether defendant attacked officer before latter made any physical attempt to make arrest, and was properly refused.

7 Cases that cite this headnote

### Attorneys and Law Firms

\*77  \*\*260 Lloyd H. Stitham, County Attorney for the County of Somerset, Pittsfield, for the State.

State v. Robinson, 145 Me. 77 (1950)
72 A.2d 260

Dubord & Dubord, by F. Harold Dubord, Waterville, Lewis L. Levine, Waterville, for defendant.

**\*78** Before MURCHIE, C. J., and THAXTER, FELLOWS, MERRILL, NULTY and WILLIAMSON, JJ.

#### Opinion

MERRILL, Justice.

On exceptions. The respondent, Rodney L. Robinson, was tried at the May Term of the Superior Court in the County of Somerset, upon a complaint and warrant charging him with assault and battery upon one John B. Gallant. At the close of the testimony, motion for a directed verdict of not guilty was seasonably made, denied, and exceptions alleged and allowed. At the conclusion of the charge, the respondent in writing requested eleven instructions to the jury. To the denial of the eleventh request, the respondent seasonably alleged exceptions which were allowed. The jury having found the respondent guilty, the case is now before this Court upon the foregoing exceptions.

The record clearly discloses that the complaining witness, John B. Gallant, a deputy sheriff, and the respondent engaged in a serious physical struggle in which both parties were severely and grieviously injured. Each of them complained that the other was the unprovoked aggressor and struck the first blow. The respondent's plea was not guilty. He admitted striking the complainant, and relied upon self defense in justification thereof. He sought to justify his acts upon two grounds, repelling an unwarranted attack by the complaining witness upon him, and resistance of an unlawful arrest.

**\*\*261** It would be profitless to relate the conflicting testimony of the complaining witness and the respondent and the witnesses called on behalf of the State and the respondent. Issues of fact were raised and their solution in a large measure depended upon the credence given by the jury to the conflicting testimony of the complaining witness and the respondent. The determination of these questions of fact was peculiarly within the province of the jury which observed **\*79** and heard the witnesses. As said by this Court in State v. Hume, 131 Me. 458, 460, 164 A. 198, 199:

'We are of opinion that, if the testimony of the state's witnesses was believed, it was sufficient to establish the guilt of the respondent beyond a reasonable doubt. A direct denial of the state's charges and a contradiction of its witnesses raised an issue of fact which was for the jury. There was no error in

the denial of the respondent's motion for a directed verdict. State v. Donahue, 125 Me. 516, 517, 133 A. 433; State v. Harvey, 124 Me. 226, 127 A. 275.'

**[1]  [2]**    The exception to the refusal to direct a verdict of not guilty must be overruled.

The requested instruction which was refused was as follows:

——

'The jury is instructed as a matter of law that the evidence adduced by the State is insufficient for you to find that the respondent at the time of the alleged assault was intoxicated to that degree sufficient to authorize the officer to arrest the respondent without a warrant for intoxication. This being true, the attempted arrest without a warrant was unlawful and the respondent had a right to resist with reasonable force. You are further instructed that unless you are convinced beyond a reasonable doubt that the respondent used more force to resist the unlawful arrest than was reasonable, that you should find the respondent not guilty.'

**[3]**    The rule of law with respect to the denial of requested instructions is correctly stated in State v. Cox, 138 Me. 151, 169, 23 A.2d 634, 644, where we said:——

'A requested instruction which is not, in its totality, sound law, is properly withheld. It is no part of the duty of the court to eliminate errors in a requested **\*80** instruction. State v. Cleaves, 59 Me. 298, 303, 8 Am.Rep. 422.'

Neither is it the duty of the Court to supply omissions in a requested instruction in order that the same may be applicable to the case at bar.

Whether or not the respondent was intoxicated was peculiarly a question of fact for the jury. The jury were properly instructed by the court as to what constituted intoxication, and this at the request of the respondent. The determination thereof depended upon the condition of the accused as exhibited by conduct. There was a sharp conflict of testimony between the respondent and his witnesses and the State's witnesses, including the complaining witness, as to the conduct of the accused.

It was an undisputed fact that the respondent had been drinking at the time the alleged assault occurred. This fact, coupled with his unprovoked assault upon the complaining witness, his use of vile epithets, and his appearance both to the witness and to the other officers at the scene of the altercation and later at the jail as related by the State's witnesses, even

though denied by the respondent, was sufficient to justify the court in submitting the question of his intoxication at the time of the alleged assault to the jury.

The requested instruction, however, has another infirmity. The instruction taken as a whole was a direction to the jury to return a verdict for the respondent unless they were convinced beyond a reasonable doubt that the respondent used more force than was reasonable in resisting unlawful arrest.

To entitle a respondent to an instruction that he should be acquitted if the jury find or fail to find the existence of a single fact set forth in the instruction, the fact so set forth must be absolutely determinative of the guilt or innocence **\*81** of the accused upon the entire evidence before the jury. In other words, the record must show that such fact is the only disputed fact upon which the guilt or innocence of the accused depends.

**\*\*262**  [4]    [5]    An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would have in repelling any other assault and battery. See 4 Am.Jur. Sec. 41, Page 148.

According to the testimony of the complaining witness, he was seated in his truck behind the steering wheel with the door closed and the window open. The respondent was in the street close to the truck. The State's witness testified as follows as to the beginning of the trouble:——

'A. After I saw Mr. Robinson I thought he was waving at me to stop, so I stopped, rolled down the window and asked him if he wanted to see me and he said no, that he was talking to his wife. Then I started rolling back up the window and he run up, opened the door and said: 'You sons of bitches are laying for me.' I said: 'We are watching you and if you continue to drive as you are we will pick you up.' Then he said: 'You sons of bitches, you are laying for me now and this is once you can't pick me up.' And then he came into the truck, grabbed me by the throat, choked me in the truck, cut off my wind. We had some struggling and scuffling in the truck.'

[6]    Even if the officer told the respondent that he was under arrest before he entered the officer's truck, which is denied by the respondent, this evidence would show that the respondent violently assaulted the officer before the officer made the

slightest attempt to take physical custody of him. While it is true that a person who is illegally arrested may use such force as is reasonably necessary to resist the force used against him, he cannot initiate the use of force. We recognize that there are circumstances under which an assault may be repelled by a battery, and a show of force may **\*82** be repelled by actual force. But words alone do not justify an assault. A mere statement by an officer that a person is under arrest, even if the officer has no authority to arrest, does not justify an attack by him on the officer before any physical attempt is made to take him into custody.

As said in Harris v. State, 21 Ga.App. 792, 95 S.E. 268:——

'The officer must, by some physical attempt, endeavor to make the unlawful arrest before the other person can lawfully strike him or otherwise resist him by the use of physical force.'

Absent physical attempt to arrest, the question is not whether the respondent used reasonable force but whether he used any force whatsoever.

[7]    Even though the complaining witness, an officer, without right told the respondent he was under arrest, it was a question of fact for the jury whether or not the respondent attacked the officer before the latter made any physical attempt to make the arrest. If so, the respondent was not entitled to use any force whatsoever and he would be guilty. The requested instruction ignored this question of fact. It did not leave its determination to the jury. It presupposed the right of the respondent to use some force and that the only question of fact was whether the force actually used was reasonable. As the instruction did not require the jury to pass upon this issue of fact which could be determinative of the respondent's guilt it was properly refused and the exception to its refusal should be overruled.

Exceptions overruled.

Judgment for the State.

**All Citations**

145 Me. 77, 72 A.2d 260

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by State v. Shaw, S.C., June 27, 1916

121 Ga. 163
Supreme Court of Georgia.

# ADAMS

v.

# STATE.

Nov. 10, 1904.

*Syllabus by the Court.*

1. Rescue, to be punishable under sections 308 and 309 of the Penal Code of 1895, must be of one in lawful custody.

2. It is not a penal offense to liberate one from unlawful custody, although he may have submitted to such custody without resistance.

3. Where the circumstances are such that a lawful arrest cannot be made except under warrant, the warrant must, at the time of making the arrest, be in the possession of the arresting officer, or of another in the neighborhood, with whom he is acting in concert. For the purpose of making an arrest, a warrant is not in the possession of the officer when it is in his house, some distance from the scene of the arrest.

4. Where one liberates another from a custody which is illegal because the warrant, though in existence, is not in the possession of the arresting officer, and the officer subsequently returns, and shows the warrant to the rescuer, the accused not being present, the refusal of the rescuer to permit the execution of the warrant does not, either alone or in conjunction with the previous liberation of the prisoner, constitute a violation of the provisions of the Code against the rescue of one in lawful custody.

## Synopsis

Error from City Court of Elberton; P. P. Proffitt, Judge.

T. L. Adams was convicted of rescue, and brings error. Reversed.

West Headnotes (4)

[1]    **Search, Seizure, and Arrest** ⟜ Execution of Arrest Warrant; Conduct of Arrest

Where a lawful arrest cannot be made, except under a warrant, the warrant must be at the time of the arrest in the possession of the arresting officer; and where it is in his house, at some distance from the scene of the arrest, the arrest is unlawful.

6 Cases that cite this headnote

[2]    **Rescue** ⟜ Nature and elements of offenses

It is not a penal offense to liberate one from unlawful custody, though he may have submitted to such arrest without resistance.

[3]    **Rescue** ⟜ Nature and elements of offenses

Where one liberates another from a custody which is illegal, because the warrant, though in existence, is not in possession of the arresting officer, and the officer subsequently returns and shows the warrant to the rescuer, the accused not being present, the refusal of the rescuer to permit the execution of the warrant, either alone or in conjunction with the previous liberation of the prisoner, does not constitute a violation of Pen.Code 1895, §§ 308, 309, against the rescue of one in lawful custody.

3 Cases that cite this headnote

[4]    **Rescue** ⟜ Nature and elements of offenses

Under Pen.Code 1895, §§ 308, 309, rescue, to be punishable, must be of one in lawful custody.

## Attorneys and Law Firms

*910 Van Duzer & Tutt, for plaintiff in error. T. J. Brown, Sol., and J. N. Worley, for the State.

## Opinion

### SIMMONS, C. J.

An accusation was returned against Adams charging him, under the Penal Code of 1895, §§ 308, 309, with having rescued one Dock Shaw while the latter was in lawful custody under legal process. Adams was found guilty, and moved for a new trial. The motion was overruled, and the movant excepted. From the evidence it appeared that a warrant had been issued for the arrest of Shaw, charging him with a misdemeanor. The warrant was issued in Elbert county, Ga., but alleged that the offense had been committed in Hart county, Ga. It was directed to "any sheriff or his deputy, coroner, constable, or marshal **\*911** of said state." Under this warrant Shaw was arrested in Clarke county, and turned over to an Elbert county constable, who brought Shaw and the warrant to Elbert county. The constable carried Shaw before a magistrate in Elbert county, and Shaw gave bond to appear in Hart county to answer the charge set out in the warrant. As arresting officer, the constable approved and accepted the bond and gave Shaw his liberty. Subsequently the constable was informed that the bond was not valid, for the reason that Shaw should, under the Penal Code of 1895, § 898, have been carried before a magistrate in the county in which the crime was alleged to have been committed, and have there given bond. The constable thereupon determined to rearrest Shaw. He found Shaw in the back yard of the home of Adams, in Elbert county. He touched Shaw upon the shoulder, and told him to consider himself under arrest, and to come with him. They went together into the front yard, and found Adams sitting on the front porch. Shaw, with the constable's consent, went upon the porch, and talked with Adams. The latter then asked the constable if he had a warrant for Shaw. The officer replied that he had it at his home, but not with him. In answer to a question by Adams, he stated that it was the same warrant under which Shaw had previously been arrested. Adams then stated that the warrant was "dead," and that Shaw could not be arrested without a new warrant. He then pushed Shaw into the house, closed the door, and by threats and offers of violence forced the officer to leave the premises. The officer did not have the warrant with him at the time, but, after consultation with an attorney, he went to his home, got the warrant, and returned with it to the residence of Adams. He showed the warrant to Adams, and told him that he would have to take Shaw under it. Adams again insisted that the warrant was "dead," and ordered the officer from his premises.

1. It is apparent from the language of the Penal Code of 1895, § 309, that a rescue is not made penal except where the person rescued is in legal custody. If the detention is illegal, or unauthorized by law, then the law does not protect it by making it a crime to liberate the person in custody. This rule seems to prevail generally. See People v. Ah Teung (Cal.) 28 Pac. 577, 15 L. R. A. 190, and cit.

2. Nor does it matter whether the person arrested has made resistance or has submitted passively to the unlawful arrest. The rescue is not punishable unless the custody is lawful, and the submission of the prisoner does not legalize the arrest or bring the unlawful detention within the protection of the law. State v. Rollins, 113 N. C. 722 (8), 18 S. E. 394. See, also, State v. Beebe, 13 Kan. 589, 19 Am. Rep. 93.

3. We come, then, to the question whether in the present case Shaw was legally in custody by virtue of a lawful arrest at the time he was liberated by Adams. Shaw was not charged with a felony, but with a misdemeanor. The offense had not been committed in the presence of the arresting officer. Shaw was not endeavoring to escape, and a warrant had actually been issued for his arrest. Under these circumstances the officer had no authority whatever to arrest Shaw, except under the warrant. Pen. Code 1895, § 896. The officer was not bound to show his warrant before making the arrest, but unless he, or another in the neighborhood, with whom he was acting in concert, had been in possession of the warrant, and in a position to show it upon demand, the arrest was not lawful. The officer did not have the warrant with him, but had it at his home. Just how far from the scene of the arrest his home was situated does not clearly appear, though it seems to have been some distance. At any rate, we think that the officer was not in such possession of the warrant as to derive from it any authority to make the arrest. Nor was the warrant in the possession of another with whom this officer was acting in concert. See Robinson v. State, 93 Ga. 77, 18 S. E. 1018, 44 Am. St. Rep. 127. In Galliard v. Laxton, 2 Best & S. 363, 9 Cox, C. C., 127, it was held that in a case in which a lawful arrest could not be made except under a warrant the arresting officers were bound to have the warrant ready to be produced if required; that an arrest in such case by police officers who did not have the warrant in their possession at the time was illegal, although the warrant had previously been in the possession of one of them, and was at the station house at the time of the arrest, and although no demand was made upon the officers for the production of the warrant; and that, as the arrest was illegal, persons who took the prisoner from the officers could not properly be convicted of rescue. In

Codd v. Cable, 1 Ex. Div. 352, it was held that one against whom a warrant had issued, charging a misdemeanor, could not be lawfully arrested under such warrant by an officer who did not have the warrant in his possession at the time. Mellor, J., said: "Whenever a warrant has been issued to arrest a person charged with an offense in respect of which he cannot be apprehended without a warrant, the police officer must have the warrant in his possession at the time when he executes it. If he has not, the arrest will be illegal." See, also, Reg. v. Chapman, 12 Cox, C. C. 4; Hale v. Roche, 8 T. R. 187. Upon principle and authority, we think the arrest and detention of Shaw must be held to have been unlawful. This being true, Adams cannot be lawfully punished for having liberated Shaw from such detention.

4. Nor was the case for the state aided by the evidence of the subsequent return of the officer with the warrant. It does not *912 appear that upon such return he saw Shaw, or that Shaw was present at all. When he first had Shaw in custody, the detention was unlawful because the officer did not have possession of the warrant under which he was acting. When subsequently he secured the warrant, there was no custody at all. Thus at no time was there any lawful custody. Besides, we regard the return of the officer with the warrant as a second and distinct effort to make the arrest. Adams had already liberated Shaw from the officer's custody, and the rescue, whatever its nature, was complete. When the officer returned with the warrant, and Adams refused to allow him to execute it, the offense was not that of rescue, but was, if anything, that of obstructing legal process.

For the reasons given above, we hold that the verdict cannot stand, and reverse the judgment of the trial judge refusing a new trial. I myself am of opinion that the bond given by Shaw, though irregular, was enforceable, and that he could not be again lawfully arrested under the same warrant; but, in view of the ruling just made, we deem it unnecessary to pass upon the other questions made and argued by counsel.

Judgment reversed. All the Justices concur.

**All Citations**

121 Ga. 163, 48 S.E. 910

End of Document                    © 2024 Thomson Reuters. No claim to original U.S.
Government Works.

KeyCite Yellow Flag - Negative Treatment

Abrogation Recognized by State v. Valentine, Wash., May 1, 1997

145 Me. 77

Supreme Judicial Court of Maine.

## STATE

### v.

## ROBINSON.

March 8, 1950.

**Synopsis**

Rodney L. Robinson was convicted in the Superior Court of Somerset County, of assault and battery, and he excepted. The Supreme Judicial Court, Merrill, J., held that evidence sustained defendant's conviction, and that denial of defendant's requested instruction, which ignored fact that defendant was not entitled to use any force whatsoever in resisting attempt by officer to make arrest, was proper.

Exceptions overruled, and judgment entered for State.

West Headnotes (7)

[1]    **Assault and Battery** ⬤= Weight and Sufficiency of Evidence

Evidence sustained conviction of assault and battery.

[2]    **Assault and Battery** ⬤= Questions of Law or Fact

In assault and battery prosecution, where testimony of state's witnesses, if believed, was sufficient to establish guilt of defendant beyond a reasonable doubt, refusal to direct a verdict of not guilty was proper.

3 Cases that cite this headnote

[3]    **Criminal Law** ⬤= Erroneous requests

**Trial** ⬤= Duty to give requested instruction; erroneous requests

A requested instruction which is not, in its totality, sound law, is properly withheld and court has no duty to eliminate errors in requested instruction.

3 Cases that cite this headnote

[4]    **Assault and Battery** ⬤= Searches, seizures, and arrests in general

An illegal arrest is an assault and battery.

1 Case that cites this headnote

[5]    **Criminal Law** ⬤= Resisting arrest

A person attempted to be restrained of his liberty has same right, and only same right, to use force in defending himself as he would have in repelling any other assault and battery.

4 Cases that cite this headnote

[6]    **Assault and Battery** ⬤= Provocation

Words alone do not justify an assault.

[7]    **Criminal Law** ⬤= Issues

In assault and battery prosecution, proffered instruction that defendant had a right to resist attempted arrest without a warrant, if at time of alleged assault defendant was not intoxicated to degree sufficient to authorize officer to arrest him without a warrant, and that unless defendant used more force to resist unlawful arrest than was reasonable, defendant was not guilty, ignored question of fact whether defendant attacked officer before latter made any physical attempt to make arrest, and was properly refused.

7 Cases that cite this headnote

**Attorneys and Law Firms**

*77  **260 Lloyd H. Stitham, County Attorney for the County of Somerset, Pittsfield, for the State.

Dubord & Dubord, by F. Harold Dubord, Waterville, Lewis L. Levine, Waterville, for defendant.

**\*78** Before MURCHIE, C. J., and THAXTER, FELLOWS, MERRILL, NULTY and WILLIAMSON, JJ.

#### Opinion

MERRILL, Justice.

On exceptions. The respondent, Rodney L. Robinson, was tried at the May Term of the Superior Court in the County of Somerset, upon a complaint and warrant charging him with assault and battery upon one John B. Gallant. At the close of the testimony, motion for a directed verdict of not guilty was seasonably made, denied, and exceptions alleged and allowed. At the conclusion of the charge, the respondent in writing requested eleven instructions to the jury. To the denial of the eleventh request, the respondent seasonably alleged exceptions which were allowed. The jury having found the respondent guilty, the case is now before this Court upon the foregoing exceptions.

The record clearly discloses that the complaining witness, John B. Gallant, a deputy sheriff, and the respondent engaged in a serious physical struggle in which both parties were severely and grievously injured. Each of them complained that the other was the unprovoked aggressor and struck the first blow. The respondent's plea was not guilty. He admitted striking the complainant, and relied upon self defense in justification thereof. He sought to justify his acts upon two grounds, repelling an unwarranted attack by the complaining witness upon him, and resistance of an unlawful arrest.

**\*\*261** It would be profitless to relate the conflicting testimony of the complaining witness and the respondent and the witnesses called on behalf of the State and the respondent. Issues of fact were raised and their solution in a large measure depended upon the credence given by the jury to the conflicting testimony of the complaining witness and the respondent. The determination of these questions of fact was peculiarly within the province of the jury which observed **\*79** and heard the witnesses. As said by this Court in State v. Hume, 131 Me. 458, 460, 164 A. 198, 199:

'We are of opinion that, if the testimony of the state's witnesses was believed, it was sufficient to establish the guilt of the respondent beyond a reasonable doubt. A direct denial of the state's charges and a contradiction of its witnesses raised an issue of fact which was for the jury. There was no error in

the denial of the respondent's motion for a directed verdict. State v. Donahue, 125 Me. 516, 517, 133 A. 433; State v. Harvey, 124 Me. 226, 127 A. 275.'

[1]  [2]  The exception to the refusal to direct a verdict of not guilty must be overruled.

The requested instruction which was refused was as follows:

'The jury is instructed as a matter of law that the evidence adduced by the State is insufficient for you to find that the respondent at the time of the alleged assault was intoxicated to that degree sufficient to authorize the officer to arrest the respondent without a warrant for intoxication. This being true, the attempted arrest without a warrant was unlawful and the respondent had a right to resist with reasonable force. You are further instructed that unless you are convinced beyond a reasonable doubt that the respondent used more force to resist the unlawful arrest than was reasonable, that you should find the respondent not guilty.'

[3]  The rule of law with respect to the denial of requested instructions is correctly stated in State v. Cox, 138 Me. 151, 169, 23 A.2d 634, 644, where we said:——

'A requested instruction which is not, in its totality, sound law, is properly withheld. It is no part of the duty of the court to eliminate errors in a requested **\*80** instruction. State v. Cleaves, 59 Me. 298, 303, 8 Am.Rep. 422.'

Neither is it the duty of the Court to supply omissions in a requested instruction in order that the same may be applicable to the case at bar.

Whether or not the respondent was intoxicated was peculiarly a question of fact for the jury. The jury were properly instructed by the court as to what constituted intoxication, and this at the request of the respondent. The determination thereof depended upon the condition of the accused as exhibited by conduct. There was a sharp conflict of testimony between the respondent and his witnesses and the State's witnesses, including the complaining witness, as to the conduct of the accused.

It was an undisputed fact that the respondent had been drinking at the time the alleged assault occurred. This fact, coupled with his unprovoked assault upon the complaining witness, his use of vile epithets, and his appearance both to the witness and to the other officers at the scene of the altercation and later at the jail as related by the State's witnesses, even

though denied by the respondent, was sufficient to justify the court in submitting the question of his intoxication at the time of the alleged assault to the jury.

The requested instruction, however, has another infirmity. The instruction taken as a whole was a direction to the jury to return a verdict for the respondent unless they were convinced beyond a reasonable doubt that the respondent used more force than was reasonable in resisting unlawful arrest.

To entitle a respondent to an instruction that he should be acquitted if the jury find or fail to find the existence of a single fact set forth in the instruction, the fact so set forth must be absolutely determinative of the guilt or innocence **\*81** of the accused upon the entire evidence before the jury. In other words, the record must show that such fact is the only disputed fact upon which the guilt or innocence of the accused depends.

**\*\*262** **[4]**    **[5]**    An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would have in repelling any other assault and battery. See 4 Am.Jur. Sec. 41, Page 148.

According to the testimony of the complaining witness, he was seated in his truck behind the steering wheel with the door closed and the window open. The respondent was in the street close to the truck. The State's witness testified as follows as to the beginning of the trouble:——

'A. After I saw Mr. Robinson I thought he was waving at me to stop, so I stopped, rolled down the window and asked him if he wanted to see me and he said no, that he was talking to his wife. Then I started rolling back up the window and he run up, opened the door and said: 'You sons of bitches are laying for me.' I said: 'We are watching you and if you continue to drive as you are we will pick you up.' Then he said: 'You sons of bitches, you are laying for me now and this is once you can't pick me up.' And then he came into the truck, grabbed me by the throat, choked me in the truck, cut off my wind. We had some struggling and scuffling in the truck.'

**[6]**    Even if the officer told the respondent that he was under arrest before he entered the officer's truck, which is denied by the respondent, this evidence would show that the respondent violently assaulted the officer before the officer made the slightest attempt to take physical custody of him. While it is true that a person who is illegally arrested may use such force as is reasonably necessary to resist the force used against him, he cannot initiate the use of force. We recognize that there are circumstances under which an assault may be repelled by a battery, and a show of force may **\*82** be repelled by actual force. But words alone do not justify an assault. A mere statement by an officer that a person is under arrest, even if the officer has no authority to arrest, does not justify an attack by him on the officer before any physical attempt is made to take him into custody.

As said in Harris v. State, 21 Ga.App. 792, 95 S.E. 268:——

'The officer must, by some physical attempt, endeavor to make the unlawful arrest before the other person can lawfully strike him or otherwise resist him by the use of physical force.'

Absent physical attempt to arrest, the question is not whether the respondent used reasonable force but whether he used any force whatsoever.

**[7]**    Even though the complaining witness, an officer, without right told the respondent he was under arrest, it was a question of fact for the jury whether or not the respondent attacked the officer before the latter made any physical attempt to make the arrest. If so, the respondent was not entitled to use any force whatsoever and he would be guilty. The requested instruction ignored this question of fact. It did not leave its determination to the jury. It presupposed the right of the respondent to use some force and that the only question of fact was whether the force actually used was reasonable. As the instruction did not require the jury to pass upon this issue of fact which could be determinative of the respondent's guilt it was properly refused and the exception to its refusal should be overruled.

Exceptions overruled.

Judgment for the State.

**All Citations**

145 Me. 77, 72 A.2d 260

End of Document    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by U.S. v. Rosas-Herrera, M.D.N.C., October 7, 2011

240 N.C. 476

Supreme Court of North Carolina.

# STATE

## v.

## MOBLEY

No. 506

|

July 9, 1954

## Synopsis

Criminal prosecution tried on appeal from Recorder's Court of the Town of Dallas upon warrants, consolidated for trial, charging defendant with public drunkenness, resisting arrest, and simple assault. From judgment of the Superior Court, Gaston County, J. A. Rousseau, J., entered on verdict of not guilty of public drunkenness and guilty of resisting arrest and guilty of assault, defendant appealed. The Supreme Court, Johnson, J., held that, where state failed to make a prima facie showing that defendant's conduct at time of arrest amounted to either an actual or threatened breach of peace, his arrest was illegal, and state failed to make out prima facie case of resisting arrest and that, where evidence did not establish that defendant had used excessive force in resisting the illegal arrest, defendant should have been acquitted of resisting arrest and assault.

Judgment reversed.

Parker, J., dissented.

West Headnotes (17)

[1]     **Obstructing Justice** ⟜ Legality of arrest

Offense of resisting arrest presupposes a lawful arrest. G.S. § 14–223.

3 Cases that cite this headnote

[2]     **Criminal Law** ⟜ Resisting arrest

**Obstructing Justice** ⟜ Legality of arrest

Everyone has right to resist an unlawful arrest, and, in such case, person attempting arrest stands in position of a wrongdoer and may be resisted by use of force as in self-defense. G.S. § 14–223.

16 Cases that cite this headnote

[3]     **Assault and Battery** ⟜ Resisting unlawful arrest

**Homicide** ⟜ Resistance of arrest

In resisting an unlawful arrest, person may use only such force as reasonably appears to be necessary to prevent unlawful restraint of his liberty, and, where excessive force is exerted, person seeking to avoid arrest may be convicted of assault or even of homicide if death ensues. G.S. § 14–223.

18 Cases that cite this headnote

[4]     **Search, Seizure, and Arrest** ⟜ Necessity of or preference for warrant

Where right and power of arrest without warrant is regulated by statute, arrest without warrant, except as authorized by statute, is illegal. G.S. §§ 15–39 to 15–41, 15–43 to 15–46.

9 Cases that cite this headnote

[5]     **Search, Seizure, and Arrest** ⟜ Felony or misdemeanor

**False Imprisonment** ⟜ Liability of officer or other person making arrest and persons assisting officer

Peace officer may make an arrest without warrant if he has reasonable ground to believe that felony has been committed or that dangerous wound has been inflicted, and, in such instance, he is protected against consequences of an erroneous arrest based upon mistaken identity of offender if officer has reason to believe that he is after right person and that suspect will escape unless immediately arrested. G.S. § 15–41.

8 Cases that cite this headnote

**[6]** **False Imprisonment** ⬦ Liability of officer or other person making arrest and persons assisting officer

If a felony is actually committed in presence of a private person, such person is protected against consequences of such arrest if he arrests either guilty person or person which such private person has reasonable ground to believe is guilty of the offense even though person arrested may be innocent. G.S. § 15–40.

3 Cases that cite this headnote

**[7]** **Search, Seizure, and Arrest** ⬦ Offense committed in presence of officer

**Search, Seizure, and Arrest** ⬦ Nature of offense; felony or misdemeanor

Either a peace officer or private person may arrest anyone who, in his presence, is actually committing or threatening to commit a breach of the peace, and a breach of the peace is threatened within meaning of statute if offending person's conduct, under surrounding facts and circumstances, is such as reasonably justifies belief that perpetration of an offense amounting to breach of peace is imminent. G.S. § 15–39.

5 Cases that cite this headnote

**[8]** **Disorderly Conduct** ⬦ Breach of the peace

Not every misdemeanor is a breach of the peace. G.S. § 15–39.

**[9]** **Search, Seizure, and Arrest** ⬦ Disorderly conduct and breach of the peace

Mere drunkenness, which is unaccompanied by language or conduct which creates, or is reasonably calculated to create, public excitement and disorder amounting to breach of peace, will not justify arrest without warrant. G.S. § 15–39.

**[10]** **Search, Seizure, and Arrest** ⬦ Felony or misdemeanor

Person making an arrest under authority of statute allowing arrest without warrant in certain misdemeanor cases must determine, at his peril preliminary to proceeding without warrant, whether an offense arrestable under the statute is being committed. G.S. § 15–39.

1 Case that cites this headnote

**[11]** **Assault and Battery** ⬦ Resisting unlawful arrest

**Obstructing Justice** ⬦ Resisting arrest

In prosecution for resisting arrest and simple assault, evidence was not sufficient to establish prima facie case that defendant's conduct, at time of his arrest without warrant, amounted to either an actual or threatened breach of peace within statute allowing arrest without warrant in such case or that defendant used excessive force in resisting the illegal arrest. G.S. § 15–39.

3 Cases that cite this headnote

**[12]** **Obstructing Justice** ⬦ Legality of arrest

Where, in prosecution for resisting arrest and simple assault, state failed to make a prima facie showing that defendant's conduct at time of arrest amounted to either an actual or threatened breach of peace, his arrest was illegal and, therefore, state failed to make out prima facie case of resisting arrest. G.S. § 15–39.

1 Case that cites this headnote

**[13]** **Assault and Battery** ⬦ Defenses and mitigating circumstances

**Obstructing Justice** ⬦ Questions for jury

Where, in prosecution for resisting arrest and simple assault, evidence did not establish that defendant had used excessive force in resisting the illegal arrest, defendant should have been acquitted of resisting arrest and assault. G.S. § 15–39.

2 Cases that cite this headnote

**[14]** **Disorderly Conduct** ⬦ Breach of the peace

An offense amounting to a nuisance is not per se a breach of the peace.

1 Case that cites this headnote

[15]   **Courts** Decisions of Same Court or Co-Ordinate Court

Where there are conflicting decisions or statute covering subject matter has been overlooked, doctrine of stare decisis is not applicable.

4 Cases that cite this headnote

[16]   **Courts** Erroneous or injudicious decisions

The Court may not, by a line of erroneous decisions, overrule a statutory enactment.

1 Case that cites this headnote

[17]   **Courts** Erroneous or injudicious decisions

Doctrine of stare decisis should never be applied to perpetrate palpable error.

6 Cases that cite this headnote

**\*\*101   \*478** Criminal prosecution tried on appeal from the Recorder's Court of the Town of Dallas upon warrants, consolidated for trial, charging the defendant with (1) public drunkenness, (2) resisting arrest, and (3) simple assault.

Police officers of the Town of Dallas arrested the defendant without warrant for public drunkenness. The defendant, asserting he was not drunk, resisted the arrest. Chief Eidson testified that as he and officer Broome drove up to Brewer's Service Station he observed the defendant 'wobbling across the driveway. * * * He was drunk. * * * I got out of the car and * * * told him he was under arrest for being drunk. I took hold of his left arm. Mr. Broome got his right arm. We started to the car. He scuffled on around behind the car and * * * hauled off and hit me beside the head and knocked my hat off, and my glasses flew out of my pocket. He started toward Mr. Broome and * * * swung at him and hit him a glancing lick. * * *' The defendant testified, as did a number of bystanders, that he was not intoxicated.

The jury returned a verdict of not guilty of public drunkenness, but guilty of resisting arrest and guilty of simple assault.

From judgment pronounced, imposing penal servitude of nine months, the defendant appealed, assigning errors.

**Attorneys and Law Firms**

Harry McMullan, Atty. Gen., Ralph Moody, Asst. Atty. Gen., for the State.

**\*\*102** R. Gregg Cherry, Ernest R. Warren, and Charles E. Hamilton, Jr., Gastonia, for defendant, appellant.

**Opinion**

JOHNSON, Justice.

[1]   [2]   The offense of resisting arrest, both at common law and under the statute, G.S. s 14-223, presupposes a lawful arrest. It is axiomatic that every person has the right to resist an unlawful arrest. In such case the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self-defense. State v. Beal, 170 N.C. 764, 87 S.E. 416; State v. Allen, 166 N.C. 265, 80 S.E. 1075; State v. Belk, 76 N.C. 10; State v. Bryant, 65 N.C. 327; **\*479** State v. Kirby, 24 N.C. 201; State v. Curtis, 2 N.C. 471; 4 Am.Jur., Arrest, Sec. 92; 6 C.J.S., Arrest, s 13, page 613. See also 28 Va. Law Review, p. 330.

[3]   True, the right of a person to use force in resisting an illegal arrest is not unlimited. He may use only such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty. State v. Allen, supra. See also State v. Glenn, 198 N.C. 79, 150 S.E. 663. And where excessive force is exerted, the person seeking to avoid arrest may be convicted of assault, or even of homicide if death ensues, 4Am.Jur., Arrest, Sec. 92, but in no event may a conviction of the offense of resisting arrest be predicated upon resistance of an unlawful arrest. State v. Allen, supra; State v. Belk, supra; Prosser on Torts, p. 165.

This brings us to the pivotal question presented by this appeal: Was the arrest of the defendant lawful or unlawful? Necessarily, the answer is dependent on whether the officers had the right to arrest the defendant without a warrant.

It has always been the general rule of the common law that ordinarily an arrest should not be made without warrant and

83 S.E.2d 100

that, subject to well-defined exceptions, an arrest without warrant is deemed unlawful. 4 Bl.Com. 289 et seq.; 6 C.J.S., Arrest, s 5, page 579; 5 C.J., p. 395. This foundation principle of the common law, designed and intended to protect the people against the abuses of arbitrary arrests, is of ancient origin. It derives from assurances of Magna Carta and harmonizes with the spirit of our constitutional precepts that the people should be secure in their persons. Nevertheless, to this general rule that no man should be taken into custody of the law without the sanction of a warrant or other judicial authority, the processes of the early English common law, in deference to the requirements of public security, worked out a number of exceptions. These exceptions related in the main to cases involving felonies and suspected felonies and to breaches of the peace. 4 Bl.Com. 292 et seq.; Archbold's Criminal P and P, 29th Edition, p. 1013 et seq.; 4 Am.Jur., Arrest, Sections 22 to 38. Arrest without warrant in felony cases was justified at common law on the theory that dangerous criminals and persons charged with heinous offenses should be incarcerated with all possible haste in the interest of public safety. Whereas, the necessity for prompt on-the-spot action in suppressing and preventing disturbances of the public peace was the factor which justified arrest without warrant in misdemeanor cases involving breaches of the peace. In such cases, with the moving consideration being the immediate preservation of the public peace, rather than the due apprehension of the offender, the theory prevailed that unless the public peace was menaced, the delay incident to obtaining a warrant from a judicial officer would not prejudice the interests of the State in punishing the offender. See  **480  Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. See also 75 University of Pennsylvania Law Review, 485.

[4]  It is not necessary for us to deal at length with the refinements of the common law exceptions to the general rule against arrest without warrant. This is so for the reason that in this State the common law exceptions have been enacted or supplanted by statute, so that the power of arrest without warrant is now defined and limited entirely **103 by legislative enactments. And the rule is that where the right and power of arrest without warrant is regulated by statute, an arrest without warrant except as authorized by statute is illegal. State v. Smith, 115 Conn. 279, 161 A. 239; State v. Bradshaw, 53 Mont. 96, 161 P. 710; State v. De Hart, N.J.Com.Pl., 129 A. 427; Mazzolini v. Gifford, 90 Vt. 352, 98 A. 904; 6 C.J.S., Arrest, s 5, pages 579 and 580. See also Stearns v. Titus, 193 N.Y. 272, 85 N.E. 1077; Vinson v. Commonwealth, 219 Ky. 482, 293 S.W. 984; Fitzpatrick v. Commonwealth, 210 Ky. 385, 275 S.W. 819.

Our General Assembly of 1868-69 enacted a comprehensive, all-embracing set of rules prescribing and limiting the power of arrest without warrant. This Act, which may well be called our Code of Arrest Without Warrant, is Chapter 178, Subchapter 1, Session Laws of 1868-69. Its caption reads as follows: 'When and by whom arrests may be made without process.' This statute clarifies, in some particulars modifies, and in other ways extends the pre-existing rules of the common law governing arrest without warrant, but in the main the Act is declaratory of the common law. The statute has been preserved and brought forward through successive codifications of our statute law. It is now codified in pertinent parts as G.S. ss 15-39, 15-40, 15-41, 15-43, 15-44, 15-45, and 15-46.

The basic rules governing arrest without warrant as prescribed by the Act of 1869 may be distinguished as they relate to (1) felonies and to (2) misdemeanors. We discuss them in that order:

[5]  1. Felonies.—G.S. s 15-41, Subchapter 1, Section 3 of the Act of 1869, confers on peace officers the right to make arrests without process when the officer has 'reasonable ground to believe' (1) a felony has been committed or a 'dangerous wound' inflicted, (2) that a particular person is guilty, and (3) that such person may escape if not immediately arrested. Under this statute the significant features are that the felony or dangerous wound need not necessarily be committed or inflicted in the presence of the officer. Indeed, in order to justify the arrest it is not essential that any such serious offense be shown to have been actually committed. It is only necessary that the officer have reasonable ground to believe such offense has been committed. Moreover, in the instances enumerated an arresting officer is protected by the statute against the consequences of an erroneous arrest based on mistaken identity of the offender; all that is required is that the officer have reasonable ground to believe he is after  *481  the right person and that the suspect will escape unless immediately arrested.

[6]  G.S. s 15-40, Subchapter 1, Section 6 of the Act of 1869, authorizes private persons to make arrests in certain felony cases. By the terms of this statute, when a felony actually has been committed in the presence of a private person, he may forthwith arrest without warrant (1) the person he knows to be guilty, or (2) the person he has reasonable ground to believe to be guilty. It is noted that this statute confers on a private citizen the right of arrest only when a felony is actually committed in his presence. Thus, if it turns out that

the supposed offense is not a felony, then the arresting private citizen may not under the terms of the statute justify taking the suspect into custody. However, if a felony actually has been committed in his presence, then the private person making the arrest has the protective benefits of the statute if he arrests either (1) the guilty person or (2) the person he has reasonable ground to believe is guilty of the offense, although perchance the person arrested may be innocent.

2. Misdemeanors.—G.S. s 15-39, Subchapter 1, Section 1 of the Act of 1869, deals with breaches of the peace. This statute confers on peace officers and private persons, on equal terms, the power of arrest without warrant in certain misdemeanor cases. The statute follows in the main the pre-existing principles of the common law. The language of the statute is as follows: 'Every person present at any riot, rout, affray or other breach of the peace, shall endeavor to suppress and prevent the same, and, if necessary for that purpose, shall arrest the offenders.' It is significant **104 to note that the statute—as did the rules of the common law it supplanted—confers no power of arrest without warrant in misdemeanor cases, as such. The power of arrest without warrant is referable entirely to the question of breach of the peace. The test is not whether the offense is a misdemeanor, but, rather, whether an arrest is necessary in order to 'suppress and prevent' a breach of the peace. The fact that an offense arrestable under this statute as a breach of the peace is also a misdemeanor, is purely coincidental. See Alexander v. Lindsey, 230 N.C. 663, 55 S.E.2d 470.

[7]  This brings us to an analysis of the intent and meaning of G.S. s 15-39. Its language is plain and clear. An arrest without warrant may be made under the provisions of this statute by anyone when it is necessary to 'suppress and prevent' a breach of the peace. This means that either a peace officer or a private person may arrest anyone who in his presence is (1) actually committing or (2) threatening to commit a breach of the peace. To justify an arrest on the ground of necessity in order to 'suppress' a breach of the peace, the conduct of the person arrested must amount to an actual breach of the peace in the presence of the person **482 making the arrest. Whereas, to justify an arrest in order to 'prevent' a breach of the peace, ordinarily there must be at least a threat of a breach of the peace, together with some overt act in attempted execution of the threat. However, we think a breach of the peace is threatened within the meaning of the statute if the offending person's conduct under the surrounding facts and circumstances is such as reasonably justifies a belief that the perpetration of an offense amounting to a breach of the peace is imminent. Quinn v. Heisel, 40 Mich. 576. See also Martin

v. State, 89 Ala. 115, 8 So. 23, 18 Am.St.Rep. 91; Com. v. Gorman, 288 Mass. 294, 192 N.E. 618, 96 A.L.R. 977; 4 Am.Jur., Arrest, Sec. 26.

[8]  In testing the legality of an arrest without warrant by the provisions of G.S. s 15-39, it must be kept in mind that not every misdemeanor is a breach of the peace. As to what constitutes a breach of the peace within the meaning of the rules which authorize an arrest without warrant in such cases, the better reasoned authorities emphasize the essentuality of showing as an element of the offense a disturbance of public order and tranquillity by act or conduct not merely amounting to unlawfulness but tending also to create public tumult and incite others to break the peace. We find this succinct statement in 4 Am.Jur., Arrest, Sec. 30:

'Generally speaking, any violation of public order or disturbance of the public tranquillity by any act or conduct tending to provoke or incite others to violence constitutes a breach of the peace, within the meaning of the rules which authorize an arrest without a warrant for a breach of the peace. * * *

'A breach of the peace may be occasioned by an affray or assault, by the use of profane and abusive language by one person toward another on a public street and in the presence of others, or by a person needlessly shouting and making a loud noise.'

The Restatement of Torts, Section 116, puts it this way: 'A breach of the peace is a public offense done by violence or one causing or likely to cause an immediate disturbance of public order.' See also Prosser on Torts, p. 160; Ballentine's Law Dictionary, p. 171; 22 Michigan Law Review, 541, 573.

[9]  In applying the statute at hand, G.S. s 15-39, it is manifest that mere drunkenness unaccompanied by language or conduct which creates, or is reasonably calculated to create, public excitement and disorder amounting to a breach of the peace, will not justify arrest without warrant under the statute. See Yarbrough v. Commonwealth, 219 Ky. 319, 292 S.W. 806; State v. Munger, 43 Wyo. 404, 4 P.2d 1094; King v. State, 132 Tex.Cr.R. 200, 103 S.W.2d 754; Crow v. State, 152 Tex.Cr.R. 586, 216 S.W.2d 201; 8 Am.Jur., Breach of Peace, Sections 6 to 10; 11 C.J.S., Breach of the Peace, ss 1 to 6.

**105 [10]   **483 It is to be kept in mind that G.S. s 15-39 contains no provisions, comparable to those in G.S. s 15-41 dealing with felony cases, which justify arrest when the facts furnish reasonable ground to believe an offense covered by

the statute is being committed. Therefore, a person making an arrest under the authority of G.S. s 15-39 must determine, at his peril, preliminary to proceeding without warrant, whether an offense arrestable under the statute is being committed. State v. Hunter, 106 N.C. 796, 11 S.E. 366, 8 L.R.A. 529; State v. McAfee, 107 N.C. 812, 12 S.E. 435, 10 L.R.A. 607; State v. Rollins, 113 N.C. 722, 18 S.E. 394. See also McKenna v. Whipple, 97 Conn. 695, 118 A. 40; People v. Ward, 226 Mich. 45, 196 N.W. 971; Fitzpatrick v. Commonwealth, supra, 210 Ky. 385, 275 S.W. 819, headnote 27; Edgin v. Talley, 169 Ark. 662, 276 S.W. 591, 42 A.L.R. 1194; 6 C.J.S., Arrest, s 5, page 580.

The State, urging that a peace officer may arrest without warrant either when (1) a misdemeanor is actually committed in his presence or (2) when he has reasonable cause to believe a misdemeanor is being committed in his presence, cites some twenty or more cases from other jurisdictions, principally those listed in the footnotes supporting one of the diverse views given in the text statement appearing in 6 C.J.S., Arrest, s 6, page 595. All the cited cases have been examined. They are distinguishable. In the light of the plain meaning of G.S. s 15-39, none of the cited cases is considered authoritative or controlling with us. The cases fall generally into four classifications: (1) decisions controlled by statutes which expressly confer on peace officers broader powers of arrest in misdemeanor cases than are conferred by either the common law or our statute, G.S. s 15-39; (2) decisions not controlled by statutes but which, nevertheless, are based on cases controlled by statutes conferring broader powers of arrest in misdemeanor cases than are conferred by either the common law or our statute; (3) decisions based upon the erroneous premise that under the common law any offense, felony or misdemeanor, committed in the presence of a peace officer is arrestable without warrant; and (4) decisions based on an erroneous declaration of the common law, as set out in the third classification, and which also embrace the further erroneous concept that under the common law an arrest without warrant may be justified in any case where the officer has probable cause or reasonable ground to believe a misdemeanor is being committed in his presence. Some of the cited decisions are premised on an erroneous interpretation of Carroll v. United States, supra, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, as being authority for the proposition that a peace officer may arrest generally for any misdemeanor committed in his presence. Whereas, the decision in the Carroll case, opinion by Mr. Chief Justice Taft, is susceptible of no such meaning; it rests squarely on the provisions of the National

Prohibition Act, which expressly authorizes summary seizure and arrest **484 whenever any person is found transporting intoxicating liquors in any vehicle in violation of law. For a clear analysis of the opinion in the Carroll case, and criticisms of subsequent cases based on the erroneous interpretation of this decision, see 75 University of Pennsylvania Law Review, 485 et seq.

While the Act of 1868-69, which supplanted the common law rules of arrest without warrant, remains unchanged in basic principles and as now codified in its various parts—G.S. ss 15-39 through 15-46—furnishes the fundamental rules governing arrest without warrant in this State, nevertheless, since the original enactment of this code of arrest without warrant, the Legislature has seen fit from time to time to extend the power of arrest without warrant to cover numerous specific situations and types of cases, some of state-wide application, others of local nature.

Chief among the local implementing statutes are numerous municipal charter provisions which confer on peace officers authority to arrest on sight without process any person found violating any municipal ordinance, or in some instances committing any misdemeanor, regardless of whether the offense does or does not amount to a breach **106 of the peace. See Coates, Law of Arrest in North Carolina, 15 N.C.Law Review, 101, where numerous examples of such charter provisions are cited. See also Alexander v. Lindsey, supra.

It is also noted that a number of implementing state-wide statutes have been enacted from time to time conferring on peace officers the power of arrest without warrant in cases not amounting to a breach of the peace. For example, G.S. s 20-183 confers on law enforcement officers power to stop any motor vehicle for the purpose of determining whether it is being operated in violation of any provision of the Motor Vehicle Act, and empowers such officers 'to arrest on sight' any person found violating any provision of the Act. Also, when a peace officer discovers a person in the act of transporting intoxicating liquor in any vehicle in violation of law, G.S. s 18-6 makes it the officer's duty to seize the liquor, take possession of the vehicle, and arrest the person in charge thereof. G.S. s 113-91(d) confers on game protectors the power to arrest on the spot for violations of game laws committed in their presence. Forest wardens are given similar powers under G.S. s 113-49 with respect to violations of the forestry laws. For a list of other North Carolina statutes giving power of arrest without warrant in misdemeanor cases not amounting to a breach of peace, see Machen, Law of Arrest

(publication of the Institute of Government, University of North Carolina, 1950), p. 46.

We have examined the charter of the Town of Dallas, Chapter 351, Private Laws of 1913. It nowhere purports to confer on the police officers of the town authority to make arrests in misdemeanor cases without warrants in cases not amounting to a breach of the peace. Indeed, no **\*485** special statute implementing the act of 1868-69 covering the case at hand has been called to our attention, and our research discloses none. Nor does it appear that the defendant was tried for public drunkenness under a town ordinance. Rather, he was charged with public drunkenness under G.S. s 14-335. Therefore, upon the record as presented the legality or illegality of the arrest in the instant case must be tested by the terms of the act of 1868-69, and more particularly by the section thereof now codified as G.S. s 15-39.

**[11]** **[12]** **[13]** In the case at hand the evidence on which the State relies fails to show prima facie that the defendant's conduct at the time of the arrest amounted either to an actual or threatened breach of the peace within the intent and meaning of G.S. s 15-39. Hence, the arrest must be treated as illegal. This being so, the State failed to make out a prima facie case of resisting arrest.

Nor does the evidence in any aspect show that the defendant used excessive force in resisting the illegal arrest. Therefore, the defendant's motion for judgment as of nonsuit, both as to the charge of resisting arrest and assault, should have been allowed, and it is so ordered. The judgment below will be vacated and reversed and the motion for nonsuit sustained.

**[14]** We have not overlooked the decision of this Court in State v. Freeman, 86 N.C. 683, cited and relied on by the State, wherein peace officers were held justified in making an arrest without warrant for public drunkenness in their presence. The person arrested was found between the hours of ten and eleven o'clock at night lying helplessly intoxicated upon the sidewalk exposed to public view at a place much frequented in the town of Hendersonville, in violation of a town ordinance making such helpless state of intoxication a nuisance and punishable by fine or imprisonment. The arrest was upheld by the Court, not upon the theory that the prosecutor's condition of drunkenness amounted to a breach of the peace, but rather upon the express ground that such drunkenness was an offense 'against decency and morality' amounting to a nuisance and therefore arrestable on sight without warrant. It is apparent that the Court in so deciding State v. Freeman was not advertent to the provisions of Chapter 178, Subchapter 1, Session Laws of 1868-69 and its

salutary impact on the law of arrest in this **\*\*107** State. This statute is nowhere mentioned in the opinion. Instead, the Court in holding that nuisance, as distinguished from breach of the peace, is sufficient to justify arrest without warrant, cites Archbold's Criminal P and P, \*page 26, note 2. This is a standard English treatise on criminal law and procedure, first published in 1822. It has since appeared in numerous editions, the last one available to us being the 29th Edition, published in 1934. It was the 6th Edition published in 1853, with American notes by Waterman, that was available to the Court when State v. Freeman was decided in 1882. The Archbold text **\*486** clearly states the common law rule to the effect that in nonfelony cases arrest without warrant is justified only in breach of peace cases. The support for the novel proposition that nuisance not amounting to breach of the peace is arrestable without warrant is found in the cited footnote 2, \*page 26. An examination of this footnote discloses that it in turn is based solely on the authority of 'Swan's Jus. p. 474.' Further investigation discloses that Swan's is a manual type of work relating to powers and duties of justices of the peace and constables in Ohio, with forms, the 3rd Edition of which was published in 1841. It is significant that the next edition of Archbold available to us, the 8th Edition, with American notes by the eminent legal scholar J. N. Pomeroy, nowhere refers to the proposition stated in the cited Waterman note. In fact, Pomeroy does not bring forward any part of the Waterman note 2 found on \*page 26 of the 6th Edition. It is manifest that the 8th Edition of this work, though published in 1880, was not available to the Court when State v. Freeman was decided (in 1882). At any rate, nowhere among the authorities presently available to us, including subsequent editions of Archbold, have we found authoritative support for the proposition that, in the absence of special statutory enactment, a nuisance not amounting to a breach of the peace is arrestable without warrant. And it is manifest that an offense amounting to a nuisance is not per se a breach of the peace. 66 C.J.S., Nuisances, s 9. Accordingly, we are constrained to hold that the decision in State v. Freeman, being repugnant to established common law rules of arrest and also in direct contravention of the provisions of the Act of 1869, and particularly the portion thereof now codified as G.S. s 15-39, is overruled. And we withdraw and treat as unauthoritative the subsequent pronouncements of this Court, whether they be—as in most instances they are—obiter dicta, or—as in a few instances—decisive of decided cases, to the effect that, in the absence of statute, a nuisance or other misdemeanor not amounting to a breach of the peace is arrestable without warrant. See State v. Pillow, 234 N.C. 146, 66 S.E.2d 657; Perry v. Hurdle, 229 N.C. 216, 49 S.E.2d 400;

State v. Loftin, 186 N.C. 205, 119 S.E. 209; State v. Rogers, 166 N.C. 388, 81 S.E. 999; Sossamon v. Cruse, 133 N.C. 470, 45 S.E. 757; State v. McAfee, supra, 107 N.C. 812, 12 S.E. 435; State v. Hunter, supra, 106 N.C. 796, 11 S.E. 366.

Similarly, we treat as unauthoritative the decision in State v. McNinch, 90 N.C. 695, which contains this statement to which the State directs our attention: 'In making an arrest upon personal observation and without warrant, the officer will be excused when no offense has been perpetrated, if the circumstances are such as reasonably warrants the belief that it was (Neal v. Joyner, 89 N.C. 287) and the jury must judge of the reasonableness of the grounds upon which the officer acted.' (Italics added.) In making this pronouncement the Court inadvertently failed to note that *487 Neal v. Joyner, 89 N.C. 287, on which the decision is expressly rested, was a felony case controlled by another part of the Act of 1869—now G.S. s 15-41—which clearly authorized arrest on reasonable ground of belief; whereas, in State v. McNinch the Court was dealing with an alleged misdemeanor wherein the officer's power of arrest derived from the so-called 'breach of peace' portion of the Act of 1869—now G.S. s 15-39—which justifies arrest without warrant only when it is necessary to 'suppress and prevent' a **108 breach of the peace. Alexander v. Lindsey, supra, 230 N.C. 663, 55 S.E.2d 470. Thus, it is manifest that the pronouncement contained in the foregoing italicized excerpt from State v. McNinch is an erroneous application in a misdemeanor case of a rule applicable only in felony and 'dangerous wound' cases. The pronouncement is disapproved and withdrawn, as are similar statements based on like facts in subsequent decisions of the Court. See State v. Jenkins, 195 N.C. 747, 143 S.E. 538; State v. Campbell, 182 N.C. 911, 110 S.E. 86; Sigmon v. Shell, 165 N.C. 582, 81 S.E. 739.

[15]  [16]  [17]  Where there are conflicting decisions the doctrine of stare decisis has no application. Patterson v. McCormick, 177 N.C. 448, 457, 99 S.E. 401. Nor should stare decisis be applied where it conflicts with a pertinent statutory provision to the contrary. 21 C.J.S., Courts, s 187, page 304. Moreover, where a statute covering the subject matter has been overlooked, the doctrine of stare decisis does not apply. 15 C.J., 958. Nor may the court by a line of erroneous decisions overrule a statutory enactment. Patterson v. McCormick, supra, 177 N.C. at page 457, 99 S.E. at page 405. Besides, the doctrine of stare decisis should never be applied to perpetuate palpable error. 21 C.J.S., Courts, ss 187 and 193.

It is to be kept in mind that the decision in this case is no attempt to provide a code for arrest without warrant, nor do we attempt to close the hiatuses in present arrest procedure. Such matters are not within the province of the Court. Our intent here is to eliminate or minimize the conflicts that have developed in the construction and application of present statutes, to the end that peace officers may know with reasonable exactitude their rights and duties in respect to making arrests without warrant.

In the situation thus presented it is for the Legislature, rather than the Court, to determine whether it has or has not kept pace with the exigencies of the times in its process of conferring on various peace officers from time to time by piecemeal enactments broadened powers of arrest without warrant. In short, since this branch of the law has come to be prescribed and regulated wholly by statute, it is for the Legislature to ponder and decide whether the present statutes meet the minimum requirements of public safety and security, or whether further extensions are necessary; for example, by the enactment of a single state-wide statute authorizing *488 any peace officer to arrest without warrant (1) when a misdemeanor or other criminal offense is committed in his presence, or (2) when he has reasonable ground to believe that the person to be arrested has committed a criminal offense and will evade arrest if not immediately taken into custody, with further enactment requiring that the minimum bond of $1,000 now required of peace officers by G.S. s 128-9 be substantially increased. See Langley v. Patrick, 238 N.C. 250, 77 S.E.2d 656.

For constructive criticisms of the present law of arrest see Machen, The Law of Arrest, p. 76 et seq.; 15 N.C.Law Review, pp. 101, 103 et seq.; 29 Michigan Law Review, pp. 452 and 453; 28 Virginia Law Review, pp. 331, 332, and 343 et seq. See also 22 Michigan Law Review, p. 541; 49 Harvard Law Review, p. 566.

The judgment below is

Reversed.

BARNHILL, C. J., concurs in result.

PARKER, Justice (dissenting).

The State's evidence tends to show the following facts. Jess Broome, a police officer of the Town of Dallas dressed in his uniform with badge and pistol, saw the defendant around 9:30 or 10 p. m. at the Dallas Grill, a public restaurant. The

defendant was staggering around drunk, and cursed Broome and the brother of the Chief of Police of Dallas, who was talking to Broome. Broome asked the defendant to hush cursing. The defendant replied if Broome got out of his car, he, the **109 defendant, would cut his head off, and for Broome 'to call the County'—manifestly referring to the County Law Enforcement Officers. Broome did not arrest the defendant then, but 'called the County' for help. Broome then went to the courthouse, called the Dallas Chief of Police A.R. Eidson, went to Eidson's home, picked him up, came back up town, and found the defendant at a service station, a public place. Chief Eidson had on a white shirt and was in civilian clothes, but had his badge on his shirt and a gun. The officers had no warrant. The officers got out of the car, and Chief Eidson told the defendant he was under arrest for being drunk. Chief Eidson took hold of his left arm, Broome his right arm, and started to the car. The defendant scuffled around behind the car, and struck Chief Eidson on the head knocking his hat off. He struck at Chief Eidson 'a whole lot.' Broome hit the defendant a glancing blow on the head with a blackjack. The defendant told Chief Eidson to shoot him. (John Puett, a witness for the defendant, testified the defendant raised his shirt, and said to Chief Eidson 'You yellow bellied s.o.b., let's see you put a slug in it.') The officers then seized the defendant, put him in their car and carried him to the county jail. The 'scuffle or pulling' between the officers and the defendant lasted about **489 15 or 20 minutes. Upon arrival at the jail the defendant cursed one of the officers there, and later tried to fight another officer there.

The defendant, and one of his witnesses, testified that Chief Eidson told the defendant he was arresting him for being drunk and disorderly. The defendant testified on cross-examination that one time he went before the Town Board to try to make Jess Broome pay him a debt, and that he had talked to three members of the Board about firing Chief Eidson. The defendant further admitted on cross-examination that he had served a prison sentence for assault with a deadly weapon with intent to kill; had been convicted of speeding and reckless driving; of violating the prohibition law; of carrying a concealed weapon; and probably convicted of an affray. The defendant testified that he knew Chief Eidson was a police officer of the Town of Dallas when he was arrested.

Whether cursing a police officer or addressing scurrilous words to him constitute a breach of the peace for which an arrest may be made without a warrant depends upon the circumstances involved. Mere impudence will not suffice. Annotation, 34 A.L.R. 566; State v. Moore, 166 N.C. 371,

81 S.E. 693; 4 Am.Jur., Arrest, sec. 31; 8 Am.Jur. Breach of Peace, sec. 10.

The State's evidence shows that the defendant cursed Broome in the presence of others, while Broome was sitting in his car on a public street in the Town of Dallas, threatened immediate force to Broome's person if he got out of his car, and then and there cursed Eidson, brother of the town's Chief of Police. It is common knowledge such conduct on a public street in the presence of others provokes and incites to immediate violence. If that evidence is accepted as true by the jury, it shows with apodeictic certainty, according to the authorities cited in the majority opinion, that the defendant committed a breach of the peace in Broome's actual presence, for which offense it was Broome's duty to arrest the defendant promptly without a warrant. G.S.N.C. s 15-39. A policeman has the same authority to make arrests within the town limits as is vested by law in a sheriff. G.S.N.C. s 160-21.

Did Broome's delay in arresting the defendant make the arrest illegal? In my opinion, the answer is No, considering the evidence in the light most favorable to the State, as is requisite on a motion for nonsuit.

It is said in 4 Am.Jur., Arrest, sec. 67: 'In making an arrest without a warrant for breach of the peace or a misdemeanor, an officer must act promptly at the time of the offense * * *. In order to justify a delay, there should be a continued attempt on the part of the officer or person apprehending the offender to make the arrest; **110 he cannot delay for any purpose which is foreign to the accomplishment of the arrest. If an officer sees an affray and calls other officers to his assistance, the fact that the actual arrest is made after the affray is over does not make the arrest without a warrant illegal. * * * The shortness of the interval does not *490 really determine whether the right to make the arrest without a warrant exists, but the delay merely throws light on the question whether the arrest was made as soon as the circumstances permitted. * * * A delay of half an hour in order to procure help in making the arrest may be reasonable, while a delay of two hours may be unreasonable, especially if the officer meanwhile is doing nothing connected with the arrest.' See also 6 C.J.S., Arrest, s 6, page 590.

In State v. McClure, 166 N.C. 321, 81 S.E. 458, 461, it is written: '* * * it is the right of a peace officer to arrest, without warrant, one who assaults him (citing authorities), and the officer did not lose the right in this case because the prisoner had walked off, according to the evidence of one witness, 30 or 40 feet, and to that of another, 50 or 75 yards.'

It is a fair inference from the evidence that Broome knew the defendant had hard feelings against him. The defendant's admissions of his criminal record, on crossexamination, did not enlarge Broome's authority, and would not justify an illegal arrest. Larson v. Feeney, 196 Mich. 1, 162 N.W. 275, L.R.A.1917D, 694. However, such admissions permit the reasonable inference that Broome knew the defendant was a man of violence. If Broome had attempted immediately to arrest the defendant for the breach of peace committed in his presence, he would have been 'rightfully the aggressor.' State v. Miller, 197 N.C. 445, 149 S.E. 590. It seems to me most probable, in the light of what happened when the arrest was made, if Broome without aid had made the arrest then and there, he would have had to injure the defendant seriously with gun or blackjack to overcome his resistance. It is also probable that under such circumstances Broome would not have succeeded in making the arrest. The State's evidence tends to show that Broome's delay was due solely to his seeking the aid of an officer, and that he did not in any way desist from that purpose before the arrest. The defendant's conduct was not that of a pacific drunk. Such conduct required summary action on Broome's part, and had not passed when the arrest was made. The offense and the arrest form part of one transaction. The State's evidence does not show how long Broome was gone in his search for aid, but it would not seem to have been over ten or fifteen or twenty minutes at the most. I think the delay was reasonable, and showed sound judgment on Broome's part.

The defendant knew that Chief Eidson and Broome were police officers of the Town of Dallas. The fact that Chief Eidson, and not Broome, told the defendant he was under arrest is immaterial. In reality Broome, with Eidson's aid made the arrest. Though Eidson said, according to the State's evidence, he was arresting the defendant for being drunk—the defendant testified Eidson said he was arresting him for being drunk and disorderly—that does not erase the defendant's breach of the peace, if the **\*491** State's evidence is believed. State v. Young, 40 Wyo. 508, 281 P. 17. For an offense committed in his actual presence, an officer is not required to state the cause of the arrest, since the accused is presumed to know the cause of which he is arrested. The authority of a private person to make an arrest is more limited than that of an officer. Graham v. State, 143 Ga. 440, 85 S.E. 328, Ann.Cas.1917A, 595; State v. Evans, 161 Mo. 95, 61 S.W. 590, 84 Am.St.Rep. 669; State v. Young, supra; Annotations, 42 L.R.A. 673; L.R.A.1918D, p. 980; 84 Am.St.Rep. 679.

'If the official authority of an officer is known to the person who is being arrested, it is not essential that he announce it or make known his intention or purpose before actually apprehending the offender.' 4 Am.Jur., Arrest, Sec. 65.

To resist an officer in the lawful discharge of his duties is made a crime at common law and in all jurisdictions by statute. **\*\*111** 39 Am.Jur., Obstructing Justice, Sec. 8; 67 C.J.S., Obstructing Justice, s 5. In Edmund Burke's words 'obedience to law is what makes government.'

In my opinion the trial court correctly overruled the motions for nonsuit, and I so vote.

I think there are prejudicial errors in the charge for which a new trial should be awarded.

The defendant assigns as error that the Court several times in its charge said the officers would be justified in making the arrest if in the officer's own judgment and opinion the defendant was guilty, when the Court should have charged that it was for the jury to say whether or not the officer had reasonable grounds to warrant the arrest. The defendant supports his argument by what this Court said in State v. McNinch, 90 N.C. 695: 'In making an arrest upon personal observation and without warrant, the officer will be excused when no offense has been perpetrated, if the circumstances are such as reasonably warrant the belief that it was (Neal v. Joyner, 89 N.C. 287), and the jury must judge of the reasonableness of the grounds upon which the officer acted.' The majority opinion says this, 'pronouncement is disapproved and withdrawn, as are similar statements based on like facts in subsequent decisions of the Court. See State v. Jenkins, 195 N.C. 747, 143 S.E. 538; State v. Campbell, 182 N.C. 911, 110 S.E. 86; Sigmon v. Shell, 165 N.C. 582, 81 S.E. 739.' To the disapproval of this statement of law, firmly embodied in our decisions, I do not agree.

The majority opinion states: 'we think a breach of the peace is threatened within the meaning of the statute [G.S.N.C. s 15-39] if the offending person's conduct under the surrounding facts and circumstances is such as reasonably justifies a belief that the perpetration of an offense amounting to a breach of the peace is imminent,' citing authorities from other jurisdictions. In my opinion that is a restatement, only slightly **\*492** rephrased, of the criticised statement in State v. McNinch, with this vital omission that the McNinch case rightfully requires 'that the jury must judge of the reasonableness of the grounds upon which the officer acted.'

The majority opinion also says: 'To justify an arrest on the ground of necessity in order to 'suppress' a breach of the peace, the conduct of the person arrested must amount to an actual breach of the peace in the presence of the person making the arrest'; and also states: 'a person making an arrest under the authority of G.S. s 15-39 must determine, at his peril, preliminary to proceeding without warrant, whether an offense arrestable under the statute is being committed', (citing in support of the last quoted excerpt State v. Hunter, 106 N.C. 796, 11 S.E. 366, 8 L.R.A. 529; State v. McAfee, 107 N.C. 812, 12 S.E. 435, 10 L.R.A. 607; State v. Rollins, 113 N.C. 722, 18 S.E. 394; and cases from other jurisdictions.)

To say that an officer making an arrest without a warrant under the provisions of G.S.N.C. s 15-39 for a breach of the peace being committed in his presence must determine at his peril before making an arrest that a breach of the peace is actually being committed, and to say that if a breach of the peace is threatened, he can act upon probable cause is to my mind an unsound distinction. Such a distinction would in one case make the officer an insurer that an offense had been committed, and in another permit him to act upon probable cause.

The excerpt quoted above from State v. McNinch, supra, is sound law, is followed by us in later decisions, and is apparently supported by the majority of courts elsewhere 'dealing with the exact question.'

In Peru v. U. S., 8 Cir., 4 F.2d 881, 883, it is said: 'A mere suspicion is not sufficient upon which to base an arrest for a misdemeanor without a warrant. U. S. v. Slusser (D.C.) 270 F. 818. In Garske v. U. S. [8 Cir.], 1 F.2d 620, 625, we said: 'The proper test, supported by the great weight of authority, by which this case should be decided is, were the circumstances presented to the officers through the testimony **112 of their senses sufficient to justify them in a good-faith belief that plaintiff in error was in their presence transporting liquor in violation of law * * *? In other words, was there probable cause for them to so believe, or were the facts sufficient to give rise merely to a suspicion thereof? If the former the arrest was legal * * *. If the latter, the arrest was illegal * * *.' It is true that this case involved the National Prohibition Law, which expressly authorizes summary arrest when any person is found transporting liquor in violation of the act. But it is also true that G.S.N.C. s 15-39 expressly authorizes summary arrest for a breach of the peace committed in the officer's presence. See also Carroll v. U. S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, opinion by Taft, C. J.

This decision is criticized in 75 Penn.Law Review 485 et seq. as follows: 'It is difficult to see how the Carroll case can be taken as authority *493 for the proposition that an arrest can be made by a peace officer without warrant for a misdemeanor less than a breach of the peace. Yet the case has been taken to stand for that proposition by some Federal Courts and as so understood has been followed and is cited in dicta where the issue was as to the officer's presence.' The article in the Penn.Law Review does not criticise this language in the Carrolll case. 'On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief reasonably arising out of circumstances known to the seizing officer * * * the search and seizure are valid.'

An article entitled 'Arrest without Warrant' in the Wisconsin Law Review (1939) pp. 385, 387 says: 'Some jurisdictions hold that the officer must actually know an offense is being committed and would hold him liable in such circumstances. The majority of jurisdictions, however, hold that it is not essential that the officer arresting without a warrant absolutely know that an offense is being committed in his presence, and rule that a bona fide belief on his part that it is being committed is enough.'

In my opinion the fact that some of the courts were construing statutes which authorize peace officers to arrest without a warrant for all misdemeanors committed in their presence, and in State v. McNinch, supra, we were interpreting a statute restricted to riots, routs, affrays or other breach of the peace makes no difference. The rationale of the decisions is identical.

I think that these words in State v. Hunter, supra [106 N.C. 796, 11 S.E. 369] (quoted in State v. McAfee, supra, and referred to in State v. Rollins, supra): 'but policemen of Asheville must determine at their peril, preliminary to proceeding without warrant, whether a valid ordinance has been violated within or out of their view', is in direct conflict with what we had previously said in State v. McNinch, supra, and what we have repeatedly said later in Perry v. Hurdle, 229 N.C. 216, 49 S.E.2d 400; Wilson v. Town of Mooresville, 222 N.C. 283, 22 S.E.2d 907; State v. Jenkins, 195 N.C. 747, 143 S.E. 538; State v. Campbell, 182 N.C. 911, 110 S.E. 86; Sigmon v. Shell, 165 N.C. 582, 81 S.E. 739; Brewer v. Wynne, 163 N.C. 319, 79 S.E. 629. Further it seems to be in conflict with the majority of courts elsewhere, which have passed on 'the exact question.' In my opinoin it is not correct law, and I vote to overrule such statement in the Hunter case.

Unless our peace officers in arresting without a warrant under G.S.N.C. s 15-39 can act upon reasonable grounds or probable cause, as set forth in State v. McNinch, supra, and subsequent decisions of this Court, a crippling blow will be inflicted upon law enforcement in this State. If officers, who in lawfully making arrests are 'rightfully the aggressors,' are not given reasonable protection in the discharge of their duties, society cannot *494 expect or receive fearless and efficient action from them. These decisions afford full protection to the rights of the individual. Men, women and children are also entitled to be summarily protected from the foul language, indecent sight and vile conduct of belligerent drunks upon the public streets and in the public places of our towns and **113 cities, and this they cannot adequately receive if the arresting officer, before making the arrest, must determine at his peril, whether an offense arrestable under the statute is being committed.

For prejudicial errors in the charge I cast my vote for a

New trial.

DENNY, Justice (concurring).

While the majority opinion deals only with the facts as to what occurred at Brewer's Service Station, the previous conduct of the defendant at the Dallas Grill, in my opinion, did not justify Chief Eidson in arresting him without a warrant.

When all the evidence adduced in the trial below is considered, it clearly appears that bad blood existed between Broome and the defendant. The evidence most favorable to the State is Broome's testimony to the effect that he saw the defendant at the Dallas Grill; that 'he was staggering around'; that the defendant cursed him and Arnold Eidson, a brother of the Chief of Police of the town of Dallas. The evidence also discloses that Arnold Eidson and officer Broome were in Broome's car at the time the purported cursing took place. There is in the record, however, no evidence tending to show that the defendant was loud and boisterous or that any person or persons other than Broome and Eidson heard anything he said. Moreover, the warrant upon which the defendant was tried, which was signed by Broome and Chief Eidson, as complainants, does not charge the defendant with disorderly conduct, but merely of appearing 'in public under the influence of intoxicating liquor.'

Furthermore, it is disclosed by the defendant's evidence and not denied by the State, that after the defendant left the Dallas Grill he went to Brewer's Service Station and was there 'about 35 or 40 minutes' before the officers attempted to arrest him. And there is no evidence tending to show any misconduct on the part of the defendant while he was at the filling station prior to the arrival of the officers. I realize that neither the defendant's evidence nor the result of the trial on the charge of being drunk is controlling on the legal question presented for review, nevertheless it is significant that a number of the leading citizens of the town of Dallas talked with the defendant while he was at the filling station and were there when he was arrested, and these citizens testified unequivocally in the trial below that the defendant was not drunk at the time of his arrest. The jury believed them and found the defendant not guilty of the charge.

*495 The law is clear that an officer is not authorized to arrest a citizen even for a breach of the peace not committed in his presence. Alexander v. Lindsey, 230 N.C. 663, 55 S.E.2d 470. The warrant upon which the defendant was convicted charged him with resisting an officer, 'to-wit: A. R. Eidson (not Broome), in the performance of his duties as such officer,' etc. The State offered no evidence tending to show that the defendant did anything in the presence of Chief Eidson that would justify his arrest without a warrant. Therefore, the State, in my opinion, has not shown facts that would justify the arrest of the defendant by Chief Eidson for alleged misconduct that occurred at least 35 or 40 minutes before he arrested him, and which alleged misconduct neither took place in his presence nor on the premises of the service station where he was arrested.

If it be conceded that the facts as related by Broome are true (which were vigorously denied by the defendant), in view of the personal animosity that existed between Broome and the defendant, I have considerable doubt as to whether the conversation or controversy between Broome and the defendant which occurred at the Dallas Grill, constituted a breach of the peace. G.S. s 15-39; and the authorities cited on this point in the majority opinion. Hence, I think that on the record before us, the majority opinion has construed the law aright.

**All Citations**

240 N.C. 476, 83 S.E.2d 100

---

End of Document                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# MCL - Section 750.349

Download Section

Chapter 750

Act 328 of 1931

328-1931-L

◀ Previous Section

Next Section ▶

## THE MICHIGAN PENAL CODE (EXCERPT)
## Act 328 of 1931

**750.349 Kidnapping; "restrain" defined; violation as felony; penalty; other violation arising from same transaction.**
Sec. 349.

(1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:

(a) Hold that person for ransom or reward.

(b) Use that person as a shield or hostage.

(c) Engage in criminal sexual penetration or criminal sexual contact prohibited under chapter LXXVI with that person.

(d) Take that person outside of this state.

(e) Hold that person in involuntary servitude.

(f) Engage in child sexually abusive activity, as that term is defined in section 145c, with that person, if that person is a minor.

(2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

(3) A person who commits the crime of kidnapping is guilty of a felony punishable by imprisonment for life or any term of years or a fine of not more than $50,000.00, or both.

(4) This section does not prohibit the person from being charged with, convicted of, or sentenced for any other violation of law arising from the same transaction as the violation of this section.

**History:** 1931, Act 328, Eff. Sept. 18, 1931 ;-- CL 1948, 750.349 ;-- Am. 2006, Act 159, Eff. Aug. 24, 2006 ;-- Am. 2014, Act 330, Eff. Jan. 14, 2015
**Former Law:** See sections 25 and 26 of Ch. 153 of R.S. 1846, being CL 1857, §§ 5735 and 5736; CL 1871, §§ 7534 and 7535; How., §§ 9099 and 9100; CL 1897, §§ 11494 and 11495; CL 1915, §§ 15216 and 15217; CL 1929, §§ 16732 and 16733; Act 189 of 1859; Act 191 of 1875; and Act 135 of 1889.

# 18 U.S. Code § 1201 - Kidnapping

U.S. Code    Notes

prev | next

**(a)**Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—

**(1)**the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

**(2)**any such act against the person is done within the special maritime and territorial jurisdiction of the United States;

**(3)**any such act against the person is done within the special aircraft jurisdiction of the United States as defined in section 46501 of title 49;

**(4)**the person is a foreign official, an internationally protected person, or an official guest as those terms are defined in section 1116(b) of this title; or

**(5)**the person is among those officers and employees described in section 1114 of this title and any such act against the person is done while the person is engaged in, or on account of, the performance of official duties,

shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

**(b)**With respect to subsection (a)(1), above, the failure to release the victim within twenty-four hours after he shall have been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away shall create a rebuttable presumption that such person has been transported in interstate or foreign commerce. Notwithstanding the preceding sentence, the fact that the presumption under this section has not yet taken effect does not preclude a Federal investigation of a possible violation of this section before the 24-hour period has ended.

**(c)**If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

**(d)**Whoever attempts to violate subsection (a) shall be punished by imprisonment for not more than twenty years.

**(e)**If the victim of an offense under subsection (a) is an internationally protected person outside the United States, the United States may exercise jurisdiction over the offense if (1) the victim is a representative, officer, employee, or agent of the United States, (2) an offender is a national of the United States, or (3) an offender is afterwards found in the United States. As used in this subsection, the United States includes all areas under the jurisdiction of the United States including any of the places within the provisions of sections 5 and 7 of this title and section 46501(2) of title 49. For purposes of this subsection, the term "national of the United States" has the meaning prescribed in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22)).

**(f)**In the course of enforcement of subsection (a)(4) and any other sections prohibiting a conspiracy or attempt to violate subsection (a)(4), the Attorney General may request assistance from any Federal, State, or local agency, including the Army, Navy, and Air Force, any statute, rule, or regulation to the contrary notwithstanding.

### **(g)SPECIAL RULE FOR CERTAIN OFFENSES INVOLVING CHILDREN.—**

#### **(1)TO WHOM APPLICABLE.—**If—

**(A)**the victim of an offense under this section has not attained the age of eighteen years; and

**(B)**the offender—

**(i)**has attained such age; and

**(ii)**is not—

**(I)**a parent;

**(II)**a grandparent;

**(III)**a brother;

**(IV)**a sister;

**(V)**an aunt;

**(VI)**an uncle; or

**(VII)**an individual having legal custody of the victim;

the sentence under this section for such offense shall include imprisonment for not less than 20 years.

**[(2)**Repealed. Pub. L. 108–21, title I, § 104(b), Apr. 30, 2003, 117 Stat. 653.]

**(h)**As used in this section, the term "parent" does not include a person whose parental rights with respect to the victim of an offense under this section have

been terminated by a final court order.[43]

(June 25, 1948, ch. 645, 62 Stat. 760; Aug. 6, 1956, ch. 971, 70 Stat. 1043; Pub. L. 92–539, title II, § 201, Oct. 24, 1972, 86 Stat. 1072; Pub. L. 94–467, § 4, Oct. 8, 1976, 90 Stat. 1998; Pub. L. 95–163, § 17(b)(1), Nov. 9, 1977, 91 Stat. 1286; Pub. L. 95–504, § 2(b), Oct. 24, 1978, 92 Stat. 1705; Pub. L. 98–473, title II, § 1007, Oct. 12, 1984, 98 Stat. 2139; Pub. L. 99–646, §§ 36, 37(b), Nov. 10, 1986, 100 Stat. 3599; Pub. L. 101–647, title IV, § 401, title XXXV, § 3538, Nov. 29, 1990, 104 Stat. 4819, 4925; Pub. L. 103–272, § 5(e)(2), (8), July 5, 1994, 108 Stat. 1373, 1374; Pub. L. 103–322, title VI, § 60003(a)(6), title XXXII, §§ 320903(b), 320924, title XXXIII, § 330021, Sept. 13, 1994, 108 Stat. 1969, 2124, 2131, 2150; Pub. L. 104–132, title VII, § 721(f), Apr. 24, 1996, 110 Stat. 1299; Pub. L. 105–314, title VII, § 702, Oct. 30, 1998, 112 Stat. 2987; Pub. L. 108–21, title I, § 104(b), Apr. 30, 2003, 117 Stat. 653; Pub. L. 109–248, title II, § 213, July 27, 2006, 120 Stat. 616.)

# Mich. Ct. R. 2.118

As amended through June 5, 2024

Rule 2.118 - Amended and Supplemental Pleadings

**(A)** Amendments.

**(1)** A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading.

**(2)** Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

**(3)** On a finding that inexcusable delay in requesting an amendment has caused or will cause the adverse party additional expense that would have been unnecessary had the request for amendment been filed earlier, the court may condition the order allowing amendment on the offending party's reimbursing the adverse party for the additional expense, including reasonable attorney fees.

**(4)** Amendments must be filed in writing, dated, and numbered consecutively, and must comply with MCR 2.113. Unless otherwise indicated, an amended pleading supersedes the former pleading.

**(B)** Response to Amendments. Within the time prescribed by
MCR 2.108, a party served with an amendment to a pleading
requiring a response under MCR 2.110(B) must

**(1)** serve and file a pleading in response to the amended
pleading, or

**(2)** serve and file a notice that the party's pleading filed in
response to the opposing party's earlier pleading will stand as
the response to the amended pleading.

**(C)** Amendments to Conform to the Evidence.
**(1)** When issues not raised by the pleadings are tried by
express or implied consent of the parties, they are treated as if
they had been raised by the pleadings. In that case,
amendment of the pleadings to conform to the evidence and
to raise those issues may be made on motion of a party at any
time, even after judgment.

**(2)** If evidence is objected to at trial on the ground that it is
not within the issues raised by the pleadings, amendment to
conform to that proof shall not be allowed unless the party
seeking to amend satisfies the court that the amendment and
the admission of the evidence would not prejudice the
objecting party in maintaining his or her action or defense on
the merits. The court may grant an adjournment to enable the
objecting party to meet the evidence.

**(D)** Relation Back of Amendments. An amendment that adds a
claim or a defense relates back to the date of the original
pleading if the claim or defense asserted in the amended
pleading arose out of the conduct, transaction, or occurrence set
forth, or attempted to be set forth, in the original pleading. In a
medical malpractice action, an amendment of an affidavit of
merit or affidavit of meritorious defense relates back to the date
of the original filing of the affidavit.
**(E)** Supplemental Pleadings. On motion of a party the court
may, on reasonable notice and on just terms, permit the party to
serve a supplemental pleading to state transactions or events

that have happened since the date of the pleading sought to be
supplemented, whether or not the original pleading is defective
in its statement of a claim for relief or a defense. The court may
order the adverse party to plead, specifying the time allowed for
pleading.

*Mich. Ct. R. 2.118*

FILED

SEP 3 0 2024

9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN

Curtis J. Bell

| STATE OF MICHIGAN<br>9TH JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY | amended<br>JURY DEMAND | CASE NO. and JUDGE<br>2024.056. |
|---|---|---|

**Court address**

330 Eleanor street Kalamazoo MI 49007

Court telephone no.

269-383-8837

| Plaintiff's/Petitioner's name<br>Undra Brown | | Defendant's/Respondent's name<br>City of Kalamazoo |
|---|---|---|
| Plaintiff's/Petitioner's address and telephone no. or attorney name, bar no., address, and telephone no.<br>Undra Brown<br>4324 Duke Street A4<br>Kalamazoo MI 49008 # 269-271-2612 | v | Defendant's/Respondent's address and telephone no. or attorney name, bar no., address, and telephone no.     # 269-488-891<br>Public Safety<br>150 E Crosstown PKWY #A<br>Kalamazoo MI 49001 |

In the matter of _____

1. I demand a jury trial.

9-30-24

Date

Signature

Undra Brown

See AT

Approved, SCAO
Form MC 22, Rev. 9/23
MCL 600.857(3), MCL 600.2529(1)(c), MCR 2.508, MCR 2.509, MCR 3.911
Page 1 of 1

Distribute form to:
Court
Plaintiff/Petitioner
Defendant/Respondent